**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

---

James Smith, on behalf of himself and all
others similarly situated, and on behalf of the
Triad Manufacturing, Inc. Employee Stock
Ownership Plan,

               Plaintiff,

vs.

GreatBanc Trust Company; the Board of
Directors of Triad Manufacturing, Inc.; David
Caito; Robert Hardie; and Michael
McCormick;

               Defendants.

---

Case No.

CLASS ACTION COMPLAINT

## I.      <u>NATURE OF ACTION</u>

1.     This is a civil enforcement action brought pursuant to Sections 502(a)(2) and 502

(a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29

U.S.C. § 1132(a)(2) and (a)(3), by Plaintiff James Smith, on behalf of the Triad Manufacturing,

Inc. Employee Stock Ownership Plan ("Triad ESOP," "the ESOP," or "the Plan") and the

participants and beneficiaries of the ESOP.

2.     The Triad ESOP is an ERISA protected retirement plan whereby the individual

retirement accounts of current and former employees are invested entirely in the stock of Triad

Manufacturing, Inc. ("Triad" or the "Company"). There is no recognized market for Triad stock;

thus, the value of the stock must be determined based on a private valuation of the Company.

3.     Plaintiff's claims stem from the creation of the Triad ESOP in December 2015 and,

shortly thereafter, the sale of 100% of the Company's stock to the Triad ESOP at an inflated value

(the "2015 Transaction" or the "Transaction") by the Co-Presidents of Triad, Defendants David Caito, Robert Hardie, and Michael McCormick.

4.  The Transaction occurred on December 17, 2015, when Defendants caused employees' retirement accounts in the ESOP to purchase 1.83 million shares of the Triad's voting common stock at $58.05 per share ($106.2 million in the aggregate) from the sellers of the stock, including Defendants Caito, Hardie and McCormick (collectively the "Selling Shareholders"). The ESOP financed the purchase of Triad shares by assuming a loan of $106.2 million, which Triad itself guaranteed. Because Triad was required to make contributions to the ESOP sufficient to pay all loan payments due, Triad's future cash flows were reduced by the amount necessary to service the ESOP's Transaction debt of $106.2 million.

5.  The employee-participants did not negotiate the Transaction price of $58.05 per share or any of the terms of the transaction. In fact, the employee-participants who purchased the Triad stock had *no input* on the terms negotiated and agreed to by the ESOP Trustee, GreatBanc Trust Company ("GreatBanc"), and the Selling Shareholders. Nor did the employees consent to the terms of the 2015 Transaction.

6.  Defendants Caito, Hardie, and McCormick (the "Co-Presidents"), who together owned most of the Triad stock sold to the ESOP and who were all members of the Triad Board of Directors, hand-picked GreatBanc to act as the ESOP trustee to approve the Transaction terms and the price of $58.05 per share. They retained: (i) control of Triad because, as Board members, they retained voting power for a majority of the Triad stock they sold to the ESOP, and (ii) power over GreatBanc because, as Board members, they retained the power to remove GreatBanc from its Trustee position.

7.     As alleged below, the valuation report (i.e., the stock appraisal) relied upon by GreatBanc to justify the price that the ESOP paid for Triad stock was based on unreliable and unrealistic projections of Triad's future cash flows and earnings. The stock appraisal also failed to account for the control the primary Selling Shareholders retained over the Company and the Board's ability to dramatically dilute the ESOP's ownership of the Company, and Triad's shrinking customer base due to the closure of brick and mortar stores. The ESOP's auditor disclosed in its audit letters filed with the Department of Labor that Triad's management (i.e., the Co-Presidents) instructed it **not** to review or audit certain financial information relevant to the ESOP's holdings in Triad stock and thus the auditor was "not able to obtain sufficient appropriate audit evidence to provide a basis for an audit opinion" concerning the Triad ESOP's financial statements for the period December 17, 2015 to the present. For these reasons and others detailed below, GreatBanc and the Co-Presidents caused the ESOP to overpay for the Triad stock purchased at $58.05 per share.

8.     The stock appraisal relied heavily on a discounted cash flow method of valuation where the stock's value is driven by financial projections of Triad's future cash flows and earnings, which were unreliable and inflated. Specifically, the Co-Presidents controlled the financial projections of Triad's future cash flows and earnings used in the stock appraisal, even though they were conflicted because as Selling Shareholders they directly benefited from any inflation in those projections which would inflate the price they received for Triad stock in the Transaction.

9.     Before approving the Transaction terms, GreatBanc failed to consider and account for Triad's guarantee of the ESOP's $106.2 million, which: (i) significantly affected Triad's balance sheet and the value of the common equity purchased by the ESOP, and (ii) negatively impacted Triad's future cash flows because Triad was obligated to contribute millions of dollars

to the ESOP on an annual basis to allow the ESOP to make all loan payments due to the Selling Shareholders.

10.     According to the ESOP's financial statements filed with the Department of Labor, the ESOP reported that the value of Triad stock was $1.85 per share, or $3,386,000 in the aggregate, on December 31, 2015. Thus, the value of the Triad stock reported by the ESOP less than a month after the sale was only 3% of what the ESOP paid for it.

11.     This was not an aberration or mistake. One year later, on December 31, 2016, the ESOP's financial statements filed with Department of Labor reported that the value of Triad stock was $1.15 per share. And the ESOP's financial statements reported that the value of Triad stock was again $1.15 per share as of December 31, 2017, and $0.96 per share as of December 31, 2018.

12.     GreatBanc and Triad's Board (including each of the Co-Presidents who were members of the Board) had a fiduciary duty under ERISA to act prudently and in the best interest of the employee participants. *See* 29 U.S.C. § 1104(a)(1)(A)-(B). However, at all relevant times, they failed to do so. Among other things, they failed to perform adequate due diligence to ensure the $58.05 per share stock appraisal was based on reliable cash flow and earnings projections, disregarded other structural problems with the Transaction and ongoing conflicts of interest, and failed to take into account Triad's shrinking customer base due to the widespread closure of retail stores. As a result of Defendants' actions, ESOP participants suffered tens of millions of dollars in losses, and their retirement accounts are worth far less than they would have been had Defendants not violated ERISA through their actions in connection with the 2015 Transaction.

13.     Under ERISA, each Defendant is liable for any losses in connection with the 2015 Transaction that violated ERISA's strict fiduciary standards and prohibited transaction rules. ERISA also provides that Plaintiff and the ESOP participants are entitled to equitable relief,

including disgorgement of any profits obtained by Defendants (including any nonfiduciary Selling Shareholders) in the Transaction.

14. ERISA authorizes participants such as Plaintiff to sue in a representative capacity on behalf of a retirement plan. *See* 29 U.S.C. § 1132(a)(2), (3). Pursuant to that authority and Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of the ESOP and all participants and beneficiaries of the ESOP.

## II.    JURISDICTION AND VENUE

15. **Subject Matter Jurisdiction.** This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(a), 29 U.S.C. § 1132(a).

16. **Personal Jurisdiction.** This Court has personal jurisdiction over Defendants because they transact business in, and have significant contacts with, this district.

17. **Venue**. Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), for at least the following reasons:

   a. Defendant GreatBanc resides in this district because its offices and headquarters are located in Lisle, Illinois, which is in DuPage County;

   b. GreatBanc's alleged breaches of fiduciary duty took place in this district at its offices located in Lisle, Illinois; and

   c. Other Defendants may be found in this district, as Triad Manufacturing transacts business and employs individuals in Chicago, Illinois and the surrounding area.

## III.    PARTIES

### A.    Plaintiff

18. Plaintiff James Smith is a former employee of the Company and a former participant in the ESOP within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7). Plaintiff Smith worked for Triad from 2015 to 2016 and was a participant at the time of the 2015 Transaction. At the time he left the Company, Plaintiff was 20% vested in the Triad shares allocated to his ESOP

5

account and he has suffered a financial injury as a result of Defendants' unlawful conduct described herein.

19.     Plaintiff Smith received a distribution for 20% of the 174.7088 shares allocated to his retirement account in the ESOP, or 34.9418 shares. His retirement distribution was paid to him in 2019 based on $0.96 per share, which was the fair market value of Triad stock reported in the ESOP's year-end 2018 financial statements.  Plaintiff Smith's total retirement distribution from his ESOP account was $33.54 for his two years of service with Triad.  He has a colorable claim to additional retirement benefits from the ESOP because his distribution of $33.54 was less than he would have received had GreatBanc and the Board Defendants not violated ERISA and not caused losses to his ESOP account.

**B.     Defendants**

20.     **Defendant GreatBanc Trust Company** is located in Lisle, Illinois. GreatBanc is the Trustee of the Triad ESOP and holds, manages, and controls the ESOP's assets. GreatBanc is a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), because it exercises discretionary authority or discretionary control respecting management of the ESOP, exercises authority and control respecting management or disposition of the ESOP's assets, and/or has discretionary authority or discretionary responsibility in the administration of the ESOP.

21.     GreatBanc, on behalf of the ESOP, approved the purchase of Triad stock from the Selling Shareholders to the ESOP for $58.05 per share, which was greater than fair market value. GreatBanc, on behalf of the ESOP, also approved all Transaction terms, including the ESOP's borrowing of the entire purchase price necessary to complete the Transaction, and the Company guarantee of the borrowed amount.

22.     **Defendant Triad Board of Directors**: According to the ESOP Plan Document, the Board of Directors appoints the Trustee of the ESOP and has at all relevant times had the power

to remove the Trustee. The members of the Board of Directors appointed GreatBanc as Trustee prior to the 2015 Transaction. As such, each of them was at all relevant times a fiduciary with responsibility for monitoring GreatBanc to ensure that it fulfilled its fiduciary obligations to the ESOP and did not cause the ESOP to engage in prohibited transactions.

23.     According to the financial statements filed with the Department of Labor, even after the Transaction, the Board of Directors retained the power to vote all of the ESOP's Triad stock not yet allocated to participant accounts. The portion of the ESOP's stock that was not allocated to participant accounts was an absolute majority from the time of the Transaction through the filing of this lawsuit and would remain so until approximately 2026.

24.     All of Triad's actions must be exercised by or under the ultimate direction of the Board Defendants. In particular, Board members and Co-Presidents Caito, Hardie, and McCormick managed the activities and affairs of the Company at all relevant times.

25.     As part of their corporate oversight responsibilities, the Board Defendants were involved in the preparation, review, and/or approval of the Company's financial statements and projections.

26.     **Defendant David Caito:** At the time of the Transaction, Defendant Caito was Co-President of Triad and was one of the Selling Shareholders who sold stock to the Triad ESOP. At the time of the Transaction he was, and continues to be, a member of the Board of Directors of Triad and thus a fiduciary to the ESOP.

27.     **Defendant Robert Hardie:** At the time of the Transaction, Defendant Hardie was Co-President of Triad and was one of the Selling Shareholders who sold stock to the Triad ESOP. At the time of the Transaction he was, and continues to be, a member of the Board of Directors and thus a fiduciary to the ESOP.

7

28. **Defendant Michael McCormick:** At the time of the Transaction, Defendant McCormick was Co-President of Triad and was one of the Selling Shareholders who sold stock to the Triad ESOP. At the time of the Transaction he was, and continues to be, a member of the Board of Directors.

29. Each of the Board Defendants, including Caito, Hardie, and McCormick, is also a "party in interest" to the ESOP as defined in ERISA § 3(14)(H), 29 U.S.C. § 1002(14)((H).

30. The Board of Directors, Caito, Hardie, and McCormick are collectively referred to as the "Board Defendants."

## IV. FACTUAL ALLEGATIONS

31. Triad is a company that engages in custom fixture manufacturing. Founded in 1991, today the Company employs approximately 325 employees.

32. At the time of the sale of the Company to the ESOP in December 2015, Triad was 100% privately owned by the Selling Shareholders, including Defendants Caito, Hardie, and McCormick.

33. In December of 2015, the Company created the Triad ESOP.

34. Prior to the creation of the ESOP, Triad employees were eligible to participate in a non-ESOP defined contribution plan which offered a menu of mutual funds such as stock funds, bond funds, and money market funds in which to invest their retirement savings.

35. After December 2015, retirement savings for Triad employees are invested in Triad stock for which there is no public market.

### A. The Sale of the Company to the Triad ESOP

36. On December 17, 2015, the Triad ESOP purchased 1.83 million shares of the Company for a purchase price of $58.05 per share, or $106,232,630 in the aggregate.

37.    To finance the purchase of shares, the Triad ESOP entered into a 30-year term loan agreement with the Company for $106,232,630.00, with an interest rate of 2.61%.

38.    On December 21, 2015 (notably, after the Transaction was reported to have taken place), the Board Defendants appointed GreatBanc as the Trustee of the Triad ESOP to represent the ESOP and approve the terms of the Transaction on behalf of the ESOP.

39.    According to the ESOP's 2015 financial statements filed with the Department of Labor, the reported value of Triad stock on December 31, 2015 was $1.85 per share or $3,386,000 million in the aggregate, which equals 3% of the value employees paid for the Triad stock. It was further reported on those financial statements that the Triad ESOP incurred an "investment loss" of negative "$102,847,130" in the "[p]eriod from December 17 to December 31, 2015."

40.    The ESOP's 2016 financial statements filed with the Department of Labor reported that the Triad stock was appraised at $1.15 per share as of December 31, 2016, and also reported that the ESOP suffered an "Investment Loss" from the "Net Depreciation in fair value of Triad Manufacturing, Inc. common stock" which was negative $1,281,000 for the year ending 2016.

41.    The ESOP's 2017 financial statements filed with the Department of Labor reported that the Triad stock was appraised at $1.15 per share as of December 31, 2017 and that the ESOP's holdings in the common stock were flat, meaning no "Investment Loss" was reported on the Triad stock for the year ending 2017.

42.    The ESOP's 2018 financial statements filed with the Department of Labor reported that the Triad stock was appraised at $0.96 per share as of December 31, 2018, and also reported that the ESOP suffered an "Investment Loss" from the "Net Depreciation in fair value of Triad Manufacturing, Inc. common stock" which was negative $347,700 for the year ending 2018.

43. Each of the ESOP's financial statements from the ESOP's inception in 2015 to 2018, state that the ESOP's "[i]nvestments in the Company's common stock are valued by an annual independent appraisal."

44. Plaintiff has never had any access to any stock appraisal of Triad shares and the underlying data or assumptions used in those stock appraisals.

45. Plaintiff also has no information concerning the exact fiduciary process conducted by GreatBanc, the Board members, or other fiduciaries of the ESOP. However, it is reasonable to infer, based on the facts alleged, that Defendants' fiduciary processes were deficient and inadequate to protect the interests of ESOP participants and beneficiaries, and resulted in ESOP participants overpaying for Triad stock in the Transaction.

**B.      GreatBanc and the Board Defendants violated their Fiduciary Duties in Connection with the 2015 Transaction.**

46. GreatBanc approved and caused the ESOP to purchase 1.83 million shares of Triad stock for $58.08 per share, which was more than fair market value.

47. The Board Defendants failed to monitor GreatBanc and ensure that it complied with its ERISA fiduciary duties to the ESOP participants and that the ESOP did not pay more than fair market value for the Triad stock.

48. To finance the ESOP's purchase of Triad, GreatBanc approved and caused the ESOP to enter into loans to the Selling Shareholders, which totaled $106.2 million (the entire purchase price), and under the terms of the Transaction the $106.2 loan was guaranteed by Triad.

49. The Company's guarantee of the ESOP's $106.2 million loan crippled Triad because the loan is classified as debt on Triad's balance sheet and is a charge to shareholders' common equity.

50.    Additionally, under the terms of the Transaction, Triad was obligated to make contributions to the ESOP in an amount sufficient to cover the loan payments, resulting in a significant cash drain on the Company.

51.    Specifically, under the Plan Document, the Company was required to make retirement contributions on the employees' behalf of no less than the amounts necessary to make any ESOP loan payments due in that year. These retirement contributions that the Company was required to make to service the ESOP's debt significantly impaired Triad's cash flows and earnings after the 2015 Transaction.

52.    The retirement contributions made to employee individual accounts are an important part of Triad employee compensation under ERISA. *See* 26 U.S.C. § 404; 26 C.F.R. § 1.404(a)-1(b).

53.    For each retirement contribution, some is used to pay interest to the Selling Shareholders on the ESOP's loan and the remaining amount results in the allocation of Triad shares to participants' accounts based on the $58.05 per share Transaction price.

54.    For example, the ESOP's 2016 financial statements filed with the Department of Labor reported that Triad made retirement contributions of $8,651,353 to the ESOP during 2016. Some of those retirement contributions were used to pay interest expense on the ESOP's Transaction debt, and the remainder were allocated to individual retirement accounts in the ESOP at the $58.05 Transaction price, which resulted in approximately 105,144 Triad shares being allocated for 2016.

55.    However, the value of the Triad stock was reported as $1.15 per share as of December 31, 2016. Thus, while $6.1 million was allocated to participants' retirement accounts in 2016, the value of those shares that was allocated to employee accounts was just $0.1 million at

year end 2016. The economic reality for employee participants is that while Triad stock was purchased and allocated to their account at $58.05 per share, the fair market value of that Triad stock was reported as $1.15 per share at year end 2016.

56.     Similarly, the ESOP's 2017 financial statements filed with the Department of Labor reported that Triad made retirement contributions of $6,495,420 to the ESOP during 2017. Some of that was used to pay interest expense on the ESOP's Transaction debt, and the remainder of the retirement contributions for ESOP participants were allocated to participant accounts at the $58.05 per share Transaction price, which resulted in approximately 79,682 Triad shares being allocated for 2017, which were reported to be valued at $1.15 at year end 2017.

57.     The ESOP's 2018 financial statements filed with the Department of Labor reported that Triad made retirement contributions of $5,153,050 to the ESOP during 2018. Some of that was used to pay interest expense on the ESOP's Transaction debt, and the remainder was allocated to participant accounts at the $58.05 per share Transaction price. This resulted in approximately 77,744 Triad shares being allocated for 2018, which were reported to be valued at $0.96 at year end 2018.

58.     Because the ESOP was created in 2015, no employee was able to sell their Triad shares until the end of 2016 (or after) as vesting service began to accrue in 2015 and at least two years of vesting service are required for employees to be vested in any portion of the Triad shares allocated to their ESOP retirement accounts.

59.     On or after December 31, 2016, employees who were eligible for distribution of their retirement accounts received just $1.15 (or less) for each share of Triad stock allocated to their account.

12

60. GreatBanc and the Board Defendants failed to consider that, as part of the Transaction, Triad would undertake two significant obligations that affected whether the Transaction was prudent and in the best interest of the employee participants:

- Triad guaranteed the $106.2 million loan to the ESOP, which was required to be classified as debt on Triad's balance sheet and a charge to shareholders' equity; and

- Triad obligated itself to make contributions to the ESOP in an amount sufficient to cover the loan payments, resulting in a significant cash drain on the company.

61. Had GreatBanc and the Board Defendants adequately considered these two significant obligations that affected Triad's balance sheet and future cash flows and operating income, they would have recognized that it was not prudent and in the ESOP participants' best interest to complete the Transaction and be bound by those terms.

**C. GreatBanc and the Board Defendants caused the ESOP to overpay for Triad stock because the $58.05 per share was greater than Fair Market Value.**

62. Consistent with its fiduciary obligations under ERISA, GreatBanc was required to ensure that the ESOP did not pay more than fair market value for Triad stock taking into account all aspects of the Transaction. However, GreatBanc failed to do so, and overlooked many important facts that should have caused it to more critically examine the stock appraisal and the purchase price of $58.05 per share.

*1. The Stock Appraisal Was Based on Unrealistic and Inflated Financial Projections of Triad's Future Cash Flows and Earnings.*

63. The stock appraisal upon which GreatBanc relied was based on unrealistic and inflated management projections of Triad's future cash flows and earnings. These unrealistic and inflated projections of Triad's future cash flows and earnings were created by the Co-Presidents (Caito, Hardie, and McCormick), all of whom were Selling Shareholders and would thus

personally profit from any increased value in the stock price paid to them by the ESOP in the Transaction.

64.     As reported in the ESOP's filings available from the Department of Labor, since the inception of the ESOP in 2015, "the approach to determining fair value of the [Triad] common stock" has been primarily based on a "[d]iscounted cash flow method [which] values a company based on projected cash flows." Specifically, the ESOP's filings state that "the Discounted Cash Flow Method was emphasized in the valuation."

65.     As a result, the main determinants of the price the ESOP paid for Triad stock were the financial projections underlying the discounted cash flow method. These projections of Triad's future cash flows, revenue, and earnings were prepared by the Co-Presidents (Caito, Hardie, and McCormick), who were conflicted. The more aggressive their projections were, the more they profited.

66.     Their financial projections underlying the valuation (i.e., the stock appraisal) were unrealistic, and did not accurately reflect Triad's future cash flows, revenue, and earnings.

67.     One reason for this is that Triad's primary customer base—brick-and-mortar retail stores—was shrinking rapidly for several years before and after the Transaction. As the following Credit Suisse presentation demonstrates, closures of brick-and-mortar retail stores have been increasing for the past two decades. For instance, in 2015, there were more retail store closures than any year since the Great Recession.



68.     The closure of brick-and-mortar stores has corresponded with the growth of E-Commerce sales. The following graph from the Federal Reserve Bank of St. Louis demonstrates the steady growth in the share of E-Commerce sales during the past two decades.



69.     The financial projections underlying the $58.05 share price paid by the ESOP did not realistically reflect that Triad's revenues came from providing shelving and fixture for retail stores with physical locations, which was an industry that had been contracting for years before and after the Transaction due to the dramatic increase in online purchasing from 2010 to the present.

15

70.     Had GreatBanc engaged in a prudent and loyal due diligence process based on undivided loyalty to the ESOP participants, it would not have approved a price of $58.05 per share as the Transaction price the ESOP paid.

71.     Had the Board Defendants properly monitored GreatBanc and ensured that it conducted adequate due diligence on whether the financial projections underlying the stock appraisal were realistic and achievable, GreatBanc would not have approved the ESOP's purchase price of $58.05 per share.

72.     The ESOP's 2018 financial statements confirm that the financial projections used in the stock appraisal did not accurately reflect Triad's true future prospects, stating: "Under the terms of the purchase agreement, if the Company did not achieve a target level of earnings for the three year period ending 12/31/2018, the principal balance of the loan is subject to reduction. As a result of the Company failing to achieve the target level of earnings, the principal balance of the loan was reduced by $13,845,500 during 2018. Prepayments made in 2015 and 2017, as well as the reduction in the principal balance for the Company's failure to achieve a targeted level of earnings, accelerated the final payoff date …."  In other words, the stock appraisal used to justify the $58.05 per share price paid by the ESOP in 2015 was based on unrealistic financial projections that the Company was unlikely to meet.

73.     Despite this recognition that the $58.05 per share price paid by the ESOP was based on unrealistic targets of earnings, and the reduction of the ESOP's debt to reflect a lesser share price of $50.48 per share, the ESOP never restored the excess price paid by participants to their individual accounts. As a result, ESOP participants' accounts which were allocated Triad stock at $58.05 per share were never made whole. The reduction of the ESOP's loan by $13,845,500 (or $7.57 per share) did not remedy the ERISA violations in connection with the Transaction at $58.05

per share because the amount of overpayment by the ESOP for Triad stock was significantly greater than $7.57 per share based on the facts alleged herein.

74.     Notably, the financials that were relied upon for purposes of the cash flow analysis underpinning the Transaction were not audited or approved by the ESOP's auditor, BDO USA, LLP ("BDO"). BDO disclosed in its audit letters filed with the Department of Labor that it was "**not able to obtain sufficient appropriate audit evidence** to provide a basis for an audit opinion" concerning all of the ESOP's financial statements from inception on December 17, 2015 to December 31, 2018 (emphasis added). The financial statements that were not audited for accuracy included a discussion of the "fair market value" of Triad stock at the time of the Transaction and thereafter.

75.     For all financial statements covering the period December 17, 2015 to year end 2018, the ESOP's auditor's "Basis for Disclaimer of Opinion" stated: "the Plan Administrator [Triad] instructed us not to perform, and we did not perform, any auditing procedures with respect to the information summarized in Note 4."

76.     The ESOP's auditor expressly disclaimed providing an audit opinion on the information presented in the ESOP financial statement and stated, "Because of the **significance of the matter** described in the Basis for Disclaimer of Opinion paragraph, we have not been able to obtain sufficient appropriate audit evidence to provide a basis for an audit opinion. Accordingly, **we do not express an opinion on these financial statements**." (Emphasis added).

77.     The BDO audit letter also stated that Triad's "[m]anagement is responsible for the preparation and fair presentation of these financial statements…. including the design, implementation, and maintenance of internal control relevant to the preparation and fair

presentation of financial statements that are free from material misstatement, whether due to fraud or error."

78.     If Triad management, specifically the Board Defendants, had fulfilled their fiduciary duties of loyalty and prudence to monitor GreatBanc and required that the ESOP auditor review and audit all relevant financial data and information underlying the stock appraisals and financial statements throughout the class period, then the ESOP would not have overpaid for Triad stock.

> 2.     *The Stock Appraisal Failed to take into Account that the ESOP did not obtain control of Triad and that the Board Defendants retained power to dilute the ESOP's ownership interest significantly.*

79.     Additionally, GreatBanc and the stock appraisal upon which it relied to approve the $58.05 share price failed to fully account for the fact that the Board Defendants, including Caito, Hardie, and McCormick, retained the power to direct the Trustee on how to vote the vast majority of the ESOP's Triad stock.

80.     The ESOP's financial statements from 2015 to 2018 state that the Board Defendants direct the Trustee how to vote all Triad Stock owned by the ESOP that is not yet allocated to participant accounts. Thus, the Board Defendants retained the power to vote an absolute majority of the ESOP's Triad stock from the time of the 2015 Transaction through the filing of this Complaint because the proportion of Triad shares allocated to participant accounts was substantially less than 25% throughout 2020.

81.     The Board Defendants will have the power to vote an absolute majority of Triad shares owned by the ESOP through approximately December 2026 because each year the necessary employer contributions to service the ESOP's debt result leave only enough funds

remaining to allocate approximately 80,000 shares to participant accounts in the ESOP, meaning that the proportion of allocated shares will be less than 50% through approximately 2026.

82.     Board members Caito, Hardie, and McCormick, who were also Selling Shareholders in the 2015 Transaction, sold their stock to the ESOP while retaining control over Triad through their power to vote a majority of the Triad stock sold to the ESOP and their power over GreatBanc as the Trustee appointed by the Board.

83.     In other words, even though the ESOP purchased 100% of Triad's common stock, the Board Defendants (including Caito, Hardie, and McCormick) retained control over the Company based on their power to vote the majority of the Triad stock owned by the ESOP until approximately 2026.

84.     The price that the ESOP paid and that GreatBanc approved should have been reduced by a discount for lack of control, given that the ESOP did not actually obtain full control over the Triad stock.

85.     On December 21, 2015, the Company's Articles of Incorporation were amended to give the Board Defendants the authority to issue up to 1,170,000 additional shares of common stock, which would bring the total shares outstanding to 3,000,000.

86.     GreatBanc and the stock appraisal upon which it relied failed to fully account for the dilutive effect of the potential 1.17 million shares that the Board could authorize. These 1.17 million shares, if authorized, would shrink the ownership interest of the ESOP from 100% to just 61%.

      **D.**    **The Transaction was Structured and Implemented to Benefit the Selling Shareholders at the Expense of ESOP Participants.**

87.     Prior to the Transaction, Defendants Caito, Hardie, and McCormick owned the majority of Triad's private stock and sought other exit strategies for their ownership interest in Triad.

88.     Several years before the Transaction, Defendant Caito stated that his goal was to take Triad public and that his attorneys were working on the process. The goal of taking Triad public never came to fruition.

89.     Defendants Caito, Hardie, and McCormick then considered a third-party buyer for the Company, but likewise this exit strategy did not materialize. Ultimately, they planned and executed the sale of Triad to their employees through the ESOP Transaction.

90.     Defendants Caito, Hardie, and McCormick were advised by an investment bank, Butcher Joseph. As reported in a press release regarding their sale of Triad Manufacturing to the ESOP, the Transaction came after they explored their "exit strategies" and determined that selling their Triad stock to their employees through the ESOP "would best fit their objectives." The press release did not state whether the ESOP's purchase of the stock would fit the employees' retirement objectives.

91.     Caito, Hardie, and McCormick were Co-Presidents and members of the Board of Directors before and during the Transaction. Because they were at the highest levels of Company management, each of them was directly involved in the preparation of all financial projections used in appraisals of Triad stock at all relevant times. Specifically, they were involved in and directed the preparation of the financial projections for Triad's future cash flows and earnings that formed the basis of the stock appraisal relied upon by GreatBanc in determining the share price paid by the ESOP of $58.05.

92.     The ESOP's financial statements from 2015 to 2018 state that Triad's "[m]anagement is responsible for the preparation and fair presentation of these financial statements in accordance with accounting principles generally accepted in the United States of America; this includes the design, implementation, and maintenance of internal controls relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error." The financial statements further state that "management accumulates the data for the appraiser from the audited financial statements of the Company."

93.     Caito, Hardie, and McCormick were aware of all facts alleged herein because they were Co-Presidents and members of the Board of Directors prior to and through all events that culminated in the completion of the sale of their Triad stock to the ESOP. Thereafter, they were involved in the ESOP's financial statements from 2015 to the present.

94.     As Board members, Caito, Hardie, and McCormick had a duty to monitor GreatBanc and ensure that it was acting based on correct financial data and projections. Instead, they actively withheld information from GreatBanc, including their knowledge that: (i) the financial projections underlying the Triad stock valuation at the time of the Transaction did not realistically reflect the Company's future revenues, cash flows, and earnings; (ii) the stock valuation did not adequately reflect that the ESOP did not obtain voting control over Triad despite purchasing 100% of the stock; and (iii) the stock valuation did not adequately reflect the ability of Board to dilute the ESOP's ownership interest by authorizing 1.7 million additional Triad shares.

**E.      Selling Shareholders Retain the Ill-Gotten Gains Received from the ESOP Transaction.**

95.     Based on the best information available to Plaintiff, each of the Selling Shareholders deposited his or her share of the proceeds from the ESOP Transaction in his or her

personal account, and each such account continues to exist in the possession of the Selling Shareholders.

96.     Additionally, the Plan Document contemplates that some or all of the Selling Shareholders would invest the proceeds of the ESOP Transaction in "qualified replacement property" pursuant to Section 1042 of the Internal Revenue Code ("I.R.C."), in order to avoid capital gains tax on the sale of their Triad stock to the ESOP. Under I.R.C. § 1042, the gains on the sale of stock to the ESOP are taxed when the qualified replacement property is sold, and capital gains taxes can be eliminated entirely if the qualified replacement property is held by the Selling Shareholders until death.

97.     Thus, the Selling Shareholders who invested the proceeds in qualified replacement property continue to hold such property to avoid the adverse tax consequences.

98.     Each Selling Shareholder who sought deferral of capital gains pursuant to I.R.C. §1042 was required to complete a signed Statement of Purchase that identified and declared the specific securities that represent the qualified replacement property that was purchased to avoid taxes on the receipt of proceeds from the ESOP Transaction. The Statement of Purchase for each Selling Shareholder who elected I.R.C. § 1042 deferral would be filed with his/her tax return.

## V. CLASS ALLEGATIONS

99.     Plaintiff brings these claims as a class action pursuant to Fed. R. Civ. P. 23 (a) and (b), on behalf of the following class:[1]

> All participants in the Triad ESOP on or after December 17, 2015 who vested under the terms of the Plan, and those participants' beneficiaries, excluding Defendants and their immediate family members; any fiduciary of the Plan; the officers and directors of Triad or of any entity in which a Defendant has a controlling interest; and legal representatives, successors, and assigns of any such excluded persons.

---

[1] Plaintiff reserves the right to revise his class definition, and to propose other or additional classes in subsequent pleadings or his motion for class certification, after discovery in this action.

100. **Numerosity.** The Class satisfies the numerosity requirement because it is composed of hundreds of persons. The Plan currently has approximately 310 participants. The number of Class members is so large that joinder of all its members is impracticable.

101. **Commonality.** As to the members of the Class, this case presents numerous common questions of law and fact, among them:

a. Whether GreatBanc engaged in a prudent and loyal investigation of the proposed purchase of 1.83 million shares of Triad stock by the ESOP in the 2015 Sale, including whether the Transaction terms and price were fair and in the best interest of ESOP participants;

b. Whether GreatBanc improperly failed to account for the lack of control the ESOP received over Triad in the Transaction;

c. Whether GreatBanc improperly relied on unrealistic financial projections of Triad's future cash flows and earnings, for purposes of assessing the value of Triad stock;

d. Whether GreatBanc failed to properly consider Triad's guarantee of the ESOP's $106.2 million loan, which would be classified as debt on Triad's balance sheet and a charge to shareholders' equity;

e. Whether Greatbanc failed to properly consider the reduced cash flow the Company would suffer due to its obligation to make contributions to the ESOP in an amount sufficient to cover the ESOP's loan payments;

f. Whether Caito, Hardie, and McCormick were involved in the preparation of all financial projections used in appraisals of Triad stock that formed the basis of the stock appraisal relied upon to set the ESOP purchase price for Triad stock at $58.05;

g. Whether Caito, Hardie, and McCormick, who were all Board members at all relevant times, breached their fiduciary duties to ESOP participants;

h. Whether the Board Defendants breached their fiduciary duties by failing to adequately monitor GreatBanc;

i. Whether the Plan engaged in prohibited transactions;

j. The amount of losses suffered by the ESOP as a result of the unlawful conduct alleged herein;

k. The proper form of equitable and injunctive relief; and

l. The extent to which any non-fiduciary Defendants are subject to equitable remedies and relief.

102. **Typicality.** Plaintiff's claims are typical of the claims of the Class because (among other things): (a) he was employed by Triad and was a participant in the Plan; (b) to the extent that Plaintiff seeks relief on behalf of the Plan pursuant to § 502(a)(2) of ERISA, his claims are not only typical of, but the same as, a claim under § 502(a)(2) brought by any other Class Member; (c) to the extent that Plaintiff seeks equitable relief, that relief would affect all Class Members equally; and (d) all of the Class members were injured and continue to be injured in the same manner because each of them overpaid for Triad stock due to the same alleged breaches of fiduciary duty and prohibited transactions.

103. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class and is committed to the vigorous representation of the Class. Plaintiff's retained counsel, Cohen Milstein Sellers and Toll PLLC ("Cohen Milstein") and Nichols Kaster, PLLP ("Nichols Kaster"), are experienced in class action and ERISA litigation, and Plaintiff has no interests antagonistic to or in conflict with the interests of the Class.

104. **Rule 23(b)(1)(A).** Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(1)(A). Fiduciaries of ERISA-covered plans have a legal obligation to act consistently with respect to all similarly situated participants and to act in the best interests of the ESOP and its participants. This action challenges whether Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the ESOP as a whole. As a result, prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that

24

would establish incompatible standards of conduct for Defendants relating to the ESOP. The Class may be certified under Rule 23(b)(1)(A).

105. **Rule 23(b)(1)(B).** Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(1)(B). Administration of an ERISA-covered plan requires that all similarly situated participants be treated the same. Resolving whether Defendants fulfilled their fiduciary obligations to the ESOP and engaged in prohibited transactions with respect to the Plan would, as a practical matter, be dispositive of the interests of the other participants in the ESOP and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Class. Further, the relief granted by the Court, including any equitable relief, injunctive relief, or accounting of profits, may be dispositive of the interests of other class members.

106. **Rule 23(b)(2).** Additionally and alternatively, class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. This action challenges whether Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the ESOP as a whole. The members of the Class are entitled to declaratory and injunctive relief to remedy Defendants' fiduciary violations. Further, as ERISA is based on trust law, any monetary relief consists of equitable monetary relief that is either provided directly by the declaratory or injunctive relief or flows as a necessary consequence of that relief.

107. **Rule 23(b)(3) requirements**. Additionally and alternatively, class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to all Class members predominate over any questions affecting individual members of the Class, and

because a class action is superior to other available methods for the fair and efficient adjudication of this action. Common questions related to liability will necessarily predominate over any individual questions because Defendants' duties and obligations were uniform to all participants and therefore all members of the Class. Plaintiff and all Class members have been harmed by the ESOP paying more than fair market value for Triad stock in the 2015 Sale. As relief and any recovery will be on behalf of the Plan, common questions as to remedies will likewise predominate over any individual issues.

108. A class action is a superior method to other available methods for the fair and efficient adjudication of this action. As the claims are brought on behalf of the ESOP, the issues in this litigation will be most efficiently resolved in a single proceeding rather than multiple proceedings. The losses suffered by individual Class members are small compared to the expense and burden of individual prosecution of this action. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendants' duties with regard to the ESOP.

109. The following also favor certification of this case as a class action:

    a. No other litigation concerning this controversy has been filed by any other members of the Class;

    b. The names and addresses of the Class members are available from the ESOP.

110. Notice will be provided to all members of the Plaintiff Class to the extent required by Rule 23.

## VI.    CAUSES OF ACTION

### Count I
### Breach of Fiduciary Duties Under ERISA §§ 404(a)(1)(A) and (B),
### 29 U.S.C. §§ 1104(a)(1)(A) and (B)
### (Against GreatBanc)

111.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

112.    ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires that a plan fiduciary act "for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan."

113.    ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires that a plan fiduciary act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

114.    In the context of a sale of the sponsoring company/employer to an ESOP, the duties of loyalty under ERISA § 404(a)(1)(A) and prudence under ERISA § 404(a)(1)(B) require a fiduciary to undertake an appropriate investigation to ensure that the ESOP and its participants pay no more than adequate consideration for the company's assets and the participants' account in the ESOP.

115.    Pursuant to ERISA § 3(18), adequate consideration for an asset for which there is no generally recognized market means the fair market value of the asset determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with the Department of Labor regulations.

116.    GreatBanc was required to undertake appropriate and independent due diligence and an investigation of the fair market value of the Triad stock before approving the Transaction. Among other things, GreatBanc was required to conduct a thorough and independent review of

27

any "independent appraisal" (i.e., the stock appraisal) to make sure that reliance on that appraisal was reasonably justified under the circumstances of the 2015 Transaction; to investigate the reliability and reasonableness of the management projections for Triad's future revenue, earnings, and cash flow upon which the discounted cash flow method used in the appraisal was based; and to make an honest, objective effort to read and understand the valuation reports and opinions, and question any uncertain methods and assumptions.

117.    As alleged above, a prudent and loyal investigation of all the relevant Transaction terms, financial projections, and assumptions in connection with the Transaction would have revealed that the Transaction price of $58.05 per share, and the $106.2 million price in the aggregate, ultimately paid by the ESOP was greater than fair market value of the Triad stock at the time of the Transaction.

118.    A prudent and loyal investigation by GreatBanc also would have revealed that it was imprudent to approve the debt structure of the Transaction.

119.    A prudent and loyal investigation by GreatBanc also would have revealed that the Transaction terms, taken together, were not in the best interest of the ESOP participants.

120.    By failing to act prudently and loyally in participants' best interest in connection with the 2015 Transaction, and by failing to restore the losses caused thereby, GreatBanc breached its fiduciary duties under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), and caused losses to the ESOP and the individual retirement accounts of the participants in the ESOP.

121.    GreatBanc is liable for appropriate relief under ERISA §§ 502(a)(2) and (3), 29 U.S.C. §§ 1132(a)(2) and (3), and ERISA § 409, 29 U.S.C. § 1109, for these violations of ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B).

**Count II**
**Failure to Monitor in Violation of ERISA §§ 404(a)(1)(A) and (B),**
**29 U.S.C. §§ 1104(a)(1)(A) and (B)**
**(Against Board Defendants)**

122.   Plaintiff incorporates the preceding paragraphs as though set forth herein.

123.   Any fiduciary with the power to appoint and/or remove other fiduciaries has an obligation to monitor the appointed fiduciary to ensure that he/she is acting in compliance with the terms of the Plan and in accordance with ERISA. *See* 29 C.F.R. § 2509.75-8 (FR-17). If the appointed fiduciary has violated or continues to violate ERISA, the monitoring fiduciary must remove the appointed fiduciary and attempt to restore any losses to the plan caused by the ERISA violations.

124.   The ESOP Plan Document provides that the Board Defendants appoint and have the power to remove the Trustee of the ESOP. Because the Board Defendants appointed GreatBanc as the ESOP Trustee, they had a duty to monitor GreatBanc and remove it if necessary.

125.   The Board Defendants breached their duty to monitor GreatBanc. Among other things, the Board Defendants:

   a.   failed to monitor and evaluate the performance of GreatBanc, or have a system in place for doing so, standing idly by while participants suffered substantial losses as a result of the fiduciary breaches of GreatBanc;

   b.   failed to monitor the fiduciary processes of GreatBanc to ensure it was acting based on realistic and reliable financial projections for Triad's future cash flows and earnings;

   c.   failed to ensure that GreatBanc conducted adequate due diligence regarding the financial projections underlying the Triad stock valuation at the time of the Transaction;

   d.   failed to ensure that GreatBanc fully considered that the ESOP did not obtain voting control over Triad (despite purchasing 100% of the stock) when approving the $58.05 per share price;

   e.   failed to implement a system to avoid conflicts of interest;

f.    failed to remove GreatBanc when they knew that its performance was inadequate for the reasons described herein; and

g.    failed to ensure that GreatBanc took appropriate remedial action after the 2015 Sale.

126.    The Board Defendants are liable for appropriate relief under ERISA § 409, 29 U.S.C. § 1109, and ERISA §§ 502(a)(2) and (3), 29 U.S.C. §§ 1132(a)(2) and (3), for their failure to appropriately monitor their appointees.

### Count III
### Prohibited Transactions in Violation of ERISA § 406(a), 29 U.S.C. §§ 1106(a)
### (Against GreatBanc)

127.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

128.    ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect (A) sale or exchange, or leasing of any property between the plan and a party in interest," or a "(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

129.    ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), provides that a plan fiduciary shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes the direct or indirect loan of money between the plan and a party in interest.

130.    ERISA § 3(14), 29 U.S.C. § 1002(14) defines a "party in interest" to include

- "any fiduciary … of such employee benefit plan"

- "an employer any of whose employees are covered by such plan"

- "an employee, officer, or director … or a 10 percent or more shareholder" of an employer whose employees are covered by the ESOP

- "a relative (as defined in paragraph (15)) of any individual described in subparagraph (A), (B), (C), or (E)[.]"

29 U.S.C. § 1002(14)(A), (C), (H), and (F).

131.    To the extent Caito, Hardie, and McCormick did not directly own the Triad stock sold to the ESOP, their family members or family trusts owned the stock. As such, all Selling Shareholders are parties in interest to the ESOP within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

132.    GreatBanc, acting as the Trustee of the ESOP and a fiduciary of the ESOP, approved and caused the ESOP to purchase 1.83 million shares of the Company from the Selling Shareholders, each of whom was a party in interest to the ESOP. This was a prohibited transaction because the 2015 Transaction constituted an exchange of property between the ESOP and the Selling Shareholders in violation of ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), as well as a transfer of the ESOP assets to the Selling Shareholders in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

133.    Additionally, thereafter each individual payment to the Selling Shareholders by the ESOP constituted another exchange of property between the ESOP and the Selling Shareholders in violation of ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), as well as a transfer of the ESOP assets to the Selling Shareholders in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

134.    As Trustee, GreatBanc caused the Triad ESOP to borrow over $106 million from the Company, which constituted a prohibited transaction in violation of ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B).

135.    GreatBanc, as Trustee, caused each payment by the ESOP of principal or interest to the Selling Shareholders in connection with the $106 million loan. Each of those payments constitutes a separate violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

136.    Defendant GreatBanc is liable for appropriate relief under ERISA § 409, 29 U.S.C. § 1109, and ERISA §§ 502(a)(2) and (3), 29 U.S.C. §§ 1132(a)(2) and (3), for the prohibited transactions set forth herein.

## Count IIV
### Prohibited Transactions in Violation of ERISA § 406(a), 29 U.S.C. §§ 1106(a)
### (Against Defendants Caito, Hardie, and McCormick)

137.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

138.    ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect (A) sale or exchange, or leasing of any property between the plan and a party in interest," or a "(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

139.    ERISA § 3(14), 29 U.S.C. § 1002(14) defines a "party in interest" to include

- "any fiduciary … of such employee benefit plan"

- "an employer any of whose employees are covered by such plan [the ESOP]"

- "an employee, officer or director … or a 10 percent or more shareholder" of an employer whose employees are covered by the ESOP.

- "a relative (as defined in paragraph (15)) of any individual described in subparagraph (A), (B), (C), or (E)[.]"

29 U.S.C. § 1002(14)(A), (C), (F), and (H).

140.    To the extent Caito, Hardie, and McCormick did not own directly the Triad stock sold to the ESOP, their family members or family trusts owned the stock. As such, each of the Selling Shareholders is a party in interest to the ESOP within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

141.    Selling Shareholders Caito, Hardie, and McCormick were also Board members before and after the 2015 Transaction and thus fiduciaries to the ESOP at all relevant times.

142.    The ESOP's purchase of 1.83 million shares of Triad voting common stock from the Selling Shareholders constituted an exchange of property between the ESOP and the Selling Shareholders in violation of ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A).

143.    Additionally, thereafter each individual payment to the Selling Shareholders by the ESOP constituted another exchange of property between the ESOP and the Selling Shareholders in violation of ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), as well as a transfer of the ESOP assets to the Selling Shareholders in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

144.    Because Defendants Caito, Hardie, and McCormick were Triad Board members who breached their fiduciary duties in failing to monitor GreatBanc's actions during the relevant period (see Count II above) each of them caused the numerous prohibited transactions alleged in this Count.

145.    Alternatively, if Defendants Caito, Hardie, and McCormick are not found to be fiduciaries who caused the prohibited transactions alleged in this Count, each of them is still liable as a non-fiduciary party in interest under *Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000) because each of them knowingly participated in transactions which violated ERISA § 406(a)(1)(A) and (D).

- As Co-Presidents and Board members they were involved in and directed the preparation of the financial projections underlying the stock appraisal relied upon by GreatBanc which was the basis of the purchase price of $58.05 per share the ESOP paid for the Company and the subsequent stock appraisals of Triad stock at year end 2015 to 2018.

- Given their role in the preparation of Triad's financial statements and its operations for decades before the Transaction, they knew that the Triad projections underlying the stock valuation to justify the $58.05 price were unrealistic and unreliable.

- They knew that the ESOP's auditor expressly declined to provide an audit opinion on the accuracy of the ESOP's financial statements including the reported value of the Triad stock from 2015 to 2018.

- They knew that the unrealistic and unreliable financial projections would result in the ESOP overpaying for Triad stock in the Transaction.

- Based on their position and unique access to company financial information, they knowingly participated in the fiduciary violations of GreatBanc alleged above, and knew that GreatBanc had no basis for approving the Transaction.

146. Thus, Caito, Hardie, and McCormick are alternatively liable for appropriate equitable relief as nonfiduciary parties in interest, including the disgorgement of any ill-gotten gains they received.

147. Caito, Hardie, and McCormick are also noteholders of the ESOP's loan used to complete the transaction. As parties to the loan and signatories of the loan agreements, they knowingly participated in each payment by the ESOP of principal and/or interest to themselves, each of which constitutes a separate violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D). For this reason as well, Caito, Hardie, and McCormick are liable for appropriate equitable relief under ERISA.

148. Defendants Caito, Hardie and McCormick are liable for appropriate relief under ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) for the prohibited transactions set forth herein.

149. Alternatively, Defendants Caito, Hardie and McCormick are liable as non-fiduciary parties in interest for appropriate equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) for their knowing participation in the prohibited transactions set forth herein.

**Count V**
**Co-Fiduciary Liability Under ERISA § 405(a), 29 U.S.C. §§ 1105(a)(1) and (a)(3)**
**(Against Defendants Caito, Hardie, and McCormick)**

150.    ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1) provides that a fiduciary "with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan … if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary[.]"

151.    Co-Presidents Caito, Hardie, McCormick were the highest-level management at Triad and were involved in and directed the preparation of the financial projections underlying the stock appraisal relied upon by GreatBanc in determining (i) the purchase price of $58.05 per share the ESOP paid for the Company; and (ii) the subsequent valuations of Triad stock at year end 2015 to 2018.

152.    The Co-Presidents are also members of Triad's Board of Directors at all relevant times.

153.    Given their role in the preparation of Triad's financial statements as well as the ESOP's financial statements, the Co-Presidents knew that the projections were unrealistic and unreliable.

154.    The Co-Presidents also knew that the ESOP's auditor expressly declined to provide an audit opinion on the accuracy of the ESOP's financial statements including the reported value of the Triad stock from 2015 to 2018. Given that those unrealistic and unreliable financial projections were the foundation of the discounted cash flow method for the Triad stock from 2015 to 2018, the Co-Presidents also knew that the incorrect financial projections they prepared would result in the ESOP overpaying for Triad stock in the Transaction.

155.    Based on their position and unique access to company financial information, the Co-Presidents knowingly participated in the fiduciary violations of GreatBanc alleged above, and knew that GreatBanc had no basis for approving the Transaction.

156.    As such, under ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1), the Co-Presidents are liable as co-fiduciaries for the ESOP's losses as a result of GreatBanc's fiduciary violations.

157.    Defendants Caito, Hardie, and McCormick are liable as co-fiduciaries for appropriate relief under ERISA § 409, 29 U.S.C. § 1109, and ERISA §§ 502(a)(2) and (3), 29 U.S.C. §§ 1132(a)(2).

## VII.    PRAYER FOR RELIEF

Plaintiff on behalf of himself and the Class, prays that judgment be entered against Defendants on each Count and that the Class be awarded the following relief:

A.    Declare that GreatBanc and the Board Defendants have each breached their fiduciary duties under ERISA;

B.    Enjoin GreatBanc and the Board Defendants from further violations of their fiduciary responsibilities, obligations. and duties;

C.    Remove GreatBanc as the Trustee of the Triad ESOP or bar it from serving as a fiduciary of the ESOP in the future;

D.    Appoint a new independent fiduciary to manage the Triad ESOP and order the costs of such independent fiduciary be paid for by Defendants;

E.    Order each fiduciary found to have violated ERISA to restore all the losses resulting from their fiduciary breaches and to disgorge all profits made through use of assets of the ESOP;

F.    Order that Defendants provide other appropriate equitable relief to the ESOP, including but not limited to providing an accounting for profits, ordering surcharge against Defendants to restore losses to the ESOP, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by any of the Defendants;

G.    An order enjoining the Defendants from dissipating any of the proceeds they received from the 2015 Sale held in their actual or constructive possession until the ESOP participants' rights can be adjudicated;

H.     An order enjoining the Defendants from transferring or disposing of any of the proceeds they received from the 2015 Sale to any person or entity, which would prejudice, frustrate, or impair the ESOP participants' ability to recover the same;

I.     Require Defendants to pay attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or order payment of fees and expenses to Plaintiff's counsel on the basis of the common benefit or common fund doctrine out of any money recovered for the Class;

J.     Award pre-judgment interest and post-judgment interest; and

K.     Award such other and further relief that the Court determines is appropriate pursuant to ERISA § 502(a)(2) and/or § 502(a)(3), 29 U.S.C. § 1132(a)(2) and/or 1132(a)(3), or pursuant to Rule 54(c) of the Federal Rules of Civil Procedure, or that is equitable and just.

April 15, 2020

Respectfully submitted,

**COHEN MILSTEIN SELLERS & TOLL PLLC**

   /s/  Carol V. Gilden
Carol V. Gilden, Illinois Bar: 6185530
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Tel: (312) 357-0370 / Fax: (312) 357-0369
cgilden@cohenmilstein.com

Michelle C. Yau, *pro hac vice* forthcoming
Mary J. Bortscheller, Illinois Bar: 6304457
Daniel R. Sutter, *pro hac vice* forthcoming
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
(202) 408-4600
myau@cohenmilstein.com
mbortscheller@cohenmilstein.com
dsutter@cohenmilstein.com

**NICHOLS KASTER, PLLP**
Kai H. Richter, *pro hac vice* forthcoming
Paul Lukas admitted
Grace Chanin, *pro hac vice* forthcoming
4600 IDS Center, 80 S 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
krichter@nka.com
lukas@nka.com
gchanin@nka.com

*Attorneys for Plaintiffs*