**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| James Smith, on behalf of himself and all others similarly situated, and on behalf of the Triad Manufacturing, Inc. Employee Stock Ownership Plan, | ) ) ) ) | Civil Action No.: 1:20-cv-02350 |
| | ) | The Honorable Judge Ronald A. Guzman |
| Plaintiffs, | ) ) ) | The Honorable Magistrate Judge Young B. Kim |
| v. | ) ) | |
| GreatBanc Trust Company, the Board of Directors of Triad Manufacturing, Inc., David Caito, Robert Hardie, and Michael McCormick, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL**
**ARBITRATION AND/OR DISMISS**

## I.     **Introduction**

James Smith brings this action on behalf of himself and all other similarly situated participants challenging the sale of Triad Manufacturing, Inc. ("Triad") stock to the Employee Stock Ownership Plan ("ESOP"), pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1101 *et seq.* ("ERISA"). The Defendants—the Board of Directors of Triad Manufacturing, Inc., and individual Defendants David Caito, Robert Hardie, and Michael McCormick—filed a Motion to Compel Arbitration and/or Dismiss, ECF No. 30 ("Mot."). Their motion fails for multiple reasons.

First, the parties never had an agreement to arbitrate Mr. Smith's claims—the ESOP added the arbitration provision to the Plan Document[1] two years after Mr. Smith left his job with Triad. Mr. Smith was never notified of the amendment, never accepted the modification to the Plan Document, and never received consideration in exchange for his acceptance. Thus, under state contract law, there is no valid agreement to arbitrate. Even if there *was* a valid agreement, the Federal Arbitration Act renders the arbitration provision unenforceable, because it removes statutory remedies provided for under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).[2] Finally, the arbitration provision itself acknowledges that if any part of the clause is found to be invalid, the *entire arbitration provision* is null and void. Because there is no valid arbitration agreement and

---

[1] ERISA-governed employee benefit plans must create a written "Plan Document" describing the terms and conditions of participation in the retirement plan (here, the ESOP). ERISA § 402(a)-(b).

[2] ERISA § 502(a)(2) (alternately, 29 U.S.C. § 1132(a)(2)) permits "a participant, beneficiary, or fiduciary" to bring a civil action "for appropriate relief under section 1109 of [ERISA]." Section 409 of ERISA (alternately, 29 U.S.C. § 1109) provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . ." 29 U.S.C. § 1109(a). Simply put, § 502(a)(2) is a unique provision of ERISA that allows plan participants to sue plan fiduciaries and recover losses *on behalf of the entire plan*, not only for individual losses.

because the arbitration provision is invalid with respect to claims under ERISA § 502(a)(2), the case should proceed in federal court, and the Court should deny Defendants' motion.

## II. Facts

### A. The Triad ESOP

Plaintiff James Smith, a former employee of Triad, brings this putative class action on behalf of himself and all other similarly situated participants, challenging the sale of Triad stock to the Triad ESOP. The Triad ESOP is a retirement plan governed by ERISA, and participant retirement accounts are invested entirely in privately-held Triad stock.

Triad manufactures custom shelving and fixtures for retail stores, which have been closing at historically high rates, corresponding to a rise in e-commerce. *See* ECF No. 1 ("Compl.") ¶¶ 31, 67–69. On December 17, 2015, Defendants Caito, Hardie, and McCormick, the Co-Presidents and shareholders of Triad ("Selling Shareholders"), sold 100% of Triad's stock to the ESOP for a total price of $106.2 million, or $58.05 per share ("ESOP Transaction"). *Id.* ¶¶ 3-5, 33, 36.

Before selling their Company to the ESOP, the Selling Shareholders sought various exit strategies for their interest in Triad, including taking Triad public and securing a third-party buyer. Compl. ¶¶ 87-90. However, these exit strategies were unsuccessful, and the Selling Shareholders ultimately decided to sell Triad to their employees, who would purchase the company using their retirement accounts, through a newly-formed ESOP. *Id.* ¶ 90. The Selling Shareholders hand-picked GreatBanc to negotiate the terms of the ESOP Transaction, including the price the ESOP would pay for Triad. *Id.* ¶ 6. The employee-participants were not allowed input about the terms of the ESOP Transaction and did not negotiate nor consent to the $106.2 million Transaction. *Id.* ¶ 5.

Instead, Defendant GreatBanc, while acting as a fiduciary to the ESOP, negotiated and approved the Transaction terms, committing the ESOP to pay the Selling Shareholders $58.05 per share ($106.2 million in the aggregate) for the privately-held Triad stock. Compl. ¶¶ 62–86. In

2

2019, the ESOP filed financial statements with the Department of Labor, indicating that as of December 31, 2018—the last date for which reporting is publicly-available—the Triad stock was valued at $0.96 per share, compared to its purchase price of $58.05 per share. *Id.* ¶¶ 11, 42. In 2019, Plaintiff Smith received his retirement distribution from his ESOP account at $0.96 per share; he received only $33.54 as the value of his entire retirement account. *Id.* ¶ 19.

Plaintiff alleges that Defendants caused the ESOP to overpay the Selling Shareholders for the Triad stock. Specifically, Plaintiff alleges that GreatBanc breached its fiduciary duties and caused prohibited transactions, because it failed to ensure that the Triad stock was sold to the ESOP for no greater than fair market value, before it approved the terms of the Transaction. Compl. ¶¶ 62–70. Plaintiff further alleges that the Selling Shareholders, who were also fiduciaries to the ESOP, breached their fiduciary duties and caused prohibited transactions when they failed to monitor GreatBanc's evaluation of the Transaction. *Id.* ¶ 71. The Selling Shareholders are also liable as co-fiduciaries, because they provided overly-aggressive projections for Triad's future cash flows, revenue, and earnings, despite knowledge that those financial projections were inflated, which amounts to knowing participation in the ESOP's overpayment for the Triad stock. Id. ¶¶ 63–65.

B.    **Plaintiff James Smith**

Mr. Smith worked for Triad from 2015 to 2016 and was a vested participant in the Triad ESOP. Compl. ¶ 18. Pursuant to the ESOP's terms, Mr. Smith could not remove his retirement savings from the ESOP when he terminated his employment with Triad in 2016. He withdrew his entire account balance in 2019, the earliest possible time he could do so under the terms of the Plan. *Id.* ¶ 19; ECF 31-1, Arts. 6.2, 9.1(e)(2).

In March 2020, Mr. Smith contacted the ESOP Plan Administrator and requested a copy of the current Plan Document, including all amendments, pursuant to ERISA § 104(b)(4), 29

U.S.C. § 1024(b)(4). The Plan Administrator sent Mr. Smith a copy of the ESOP Summary Plan Description, current as of 2018,[3] but failed to send Mr. Smith a copy of the Plan or any of the written amendments to the Plan.[4] *See* Ex. B to Decl. of Michelle C. Yau (cover letter listing the documents included in response to Mr. Smith's document request).[5]

On April 15, 2020, Mr. Smith filed this action in a representative capacity on behalf of all participants in the Triad ESOP, seeking relief on behalf of the entire Plan (i.e. the Triad ESOP), including the restoration of all "losses to the plan," the removal of GreatBanc as a fiduciary, and the disgorgement of profits, pursuant to ERISA §§ 502(a)(2) & (a)(3) and 409.

### III.    This Case Should not be Dismissed under Rule 12(b)(3)

Defendants argue that the case should be dismissed pursuant to the arbitration amendment added to the Plan Document in 2018, which states "arbitration proceedings shall be held in St. Louis, Missouri, or at such other place as may be selected by mutual agreement of the parties."

---

[3] The 2018 Summary Plan Description ("SPD") contains a section titled "Claims Procedure." Ex. A to Decl. of Michelle C. Yau (SPD) at 13–14. The last paragraph of the "Claims Procedure" section references arbitration, but does not include the arbitration clause at issue. *Id.* at 14. Rather, it states that "[t]he arbitration procedures and the scope of remedies and arbitrator authority are described in more detail in the Plan"—a document Mr. Smith *never received*. *Id.* Further, another section of the 2018 SPD, titled "Your Rights Under ERISA," expressly states that "[i]f it should happen that Plan fiduciaries misuse the Plan's money . . . **you may file suit in federal court.**" *Id.* at 14–16 (emphasis added). Indeed, the documentation Mr. Smith received from the Triad Plan administrator failed to notify him about the scope of the arbitration clause at issue and made clear that breach of fiduciary duty claims, such as the claim here, should be filed in federal court.

[4] The court may properly consider both the Summary Plan Description and the cover letter from the Plan administrator at this stage. "When ruling on a motion to dismiss for improper venue, the district court is not 'obligated to limit its consideration to the pleadings [or to] convert the motion to one for summary judgment' if the parties submit evidence outside the pleadings." *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809–10 (7th Cir. 2011) (quoting *Cont'l Cas. Co v. Am Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005)) (alterations in *Faulkenburg*).

[5] Should Defendants introduce a factual dispute in their Reply brief relevant to the enforceability of the arbitration clause, Plaintiff requests an evidentiary hearing on the issue. *See Mecum v. Weilert Custom Homes, LLC*, 239 F. Supp. 3d 1093, 1097 (N.D. Ill. 2017); 9 U.S.C. § 4.

Mot. at 4 n.2; ECF No. 31-4, Art. 22.1(d). *If* the court decides the arbitration amendment is valid and enforceable, the Court should dismiss the case, pursuant to Rule 12(b)(3). *See Nandorf, Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 410 F. Supp. 3d 882, 887 (N.D. Ill. 2019) ("Where a court faces a motion to compel arbitration in a forum outside of its district, it should dismiss the complaint under Rule 12(b)(3) *if the parties' claims are subject to arbitration*" (emphasis added)). However, this case is properly filed in the Northern District of Illinois[6] and this court has the authority to assess the validity of the arbitration clause. *See Campbell v. SI Wireless, LLC*, 2017 WL 3887928, at *2–3 (S.D. Ill. Sept. 5, 2017); *Space Coast Credit Union v. Meadows Credit Union*, 2013 WL 12191889, at *2–3 (S.D. Ill. May 29, 2013).

As explained below, Mr. Smith did not agree to arbitrate his claims and thus the arbitration amendment is not enforceable against him. This case was properly filed in the Northern District of Illinois, there is no agreement to arbitrate, and the Court should deny the motion to dismiss.

## IV.    Defendants' Motion to Compel Arbitration Should be Denied

It is well-settled in the Seventh Circuit that "arbitration is a creature of contract" and a party cannot be compelled to arbitrate if he has not agreed to do so.  *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033 (7th Cir. 2016); *see also A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054 (7th Cir. 2018). Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, a court may *only* order a party to arbitrate his claims if three narrow circumstances exist: (1) there is "an enforceable written agreement to arbitrate"; (2) the dispute at issue falls "within the scope of the arbitration agreement"; and (3) a party "refus[es] to arbitrate." *Chacon v. Comcast Cable*

---

[6] Pursuant to ERISA's venue provision, this case was properly filed in this District, because GreatBanc is headquartered in Lisle, IL, a city within this District. 29 U.S.C. § 1132(e)(2) ("[A]n action under this subchapter . . . may be brought in [1] the district where the plan is administered, [2 the district] where the breach took place, or [3] where a defendant resides or may be found"). GreatBanc admits that venue is proper in the Northern District of Illinois. *See* ECF No. 45 ¶ 17.

*Commc'ns Mgmt., LLC*, 2018 WL 3046868, at *1 (N.D. Ill. June 20, 2018) (Guzman, J.) (quoting *A.D.*, 885 F.3d at 1060). Moreover, even where there is an agreement to arbitrate, the FAA does not compel enforcement of an arbitration provision that eliminates the right to pursue statutory remedies. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)*.* The instant motion should be denied, because Mr. Smith never agreed to arbitrate his ERISA claims relating to the Triad ESOP and because the arbitration clause attempts to eliminate statutory remedies that Congress provided to plan participants under ERISA § 502(a)(2).

A.    **Mr. Smith Never Entered into an Agreement to Arbitrate**

The Court cannot compel arbitration in the absence of an agreement to arbitrate, without defeating "the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 648 (1986). Whether an agreement to arbitrate is enforceable is a matter of state law. *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017) (citation omitted).

Defendants argue that Missouri law should be used to determine whether the arbitration amendment is enforceable, because the Plan amendment states that "the arbitrator(s) shall determine the respective rights and obligations of the parties under federal law, or if federal law is not applicable, the laws of the State of Missouri." Mot. at 7 (quoting Plan Art. 22.1(g)). Because the arbitration amendment is unenforceable under both Illinois and Missouri law,[7] Plaintiff agrees

---

[7] In Illinois, determining "the enforceability of a mandatory arbitration agreement . . . turns upon fundamental principles of contract law." *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 106 (Ill. 2006). These fundamental principles boil down to "offer, acceptance, and consideration." *Vassilkovska v. Woodfield Nissan, Inc.*, 830 N.E.2d 619, 624, 630 (Ill. App. Ct. 2005) (concluding

to apply Missouri law for purposes of this motion only – *i.e.*, Plaintiffs agree to apply Missouri law only to assess whether the arbitration amendment is enforceable.

"Missouri contract law applies to determine whether the parties have entered a valid agreement to arbitrate." *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 856 (Mo. banc 2006). In Missouri, "[t]he essential elements of any contract, including one for arbitration, are 'offer, acceptance, and bargained for consideration.'" *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. banc 2014) (quoting *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. banc 1988)). "An offer is made when the offeree—the person receiving the offer—would 'reasonably believe that an offer has been made.'" *Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019) (quoting *Jackson v. Higher Educ. Loan Auth. Of Mo.*, 497 S.W.3d 283, 288 (Mo. Ct. App. 2016)). Acceptance of an offer must be "positive and unambiguous." *Kunzie v. Jack-in-the-Box, Inc.*, 330 S.W.3d 476, 484 (Mo. Ct. App. 2010) (quoting 2 Williston on Contracts § 6.10 (4th ed. 2007)) (arbitration agreement added to employee's contract was not accepted by employee simply because he continued to work for employer).

Framed differently, there must be "*unequivocal acceptance*" of an offer for there to be an agreement to arbitrate. *Kunzie*, 330 S.W.3d at 484 (emphasis in original). Finally, the party offering an arbitration agreement *must* provide consideration in exchange for acceptance, which "generally consists either of a promise (to do or refrain from doing something) or the transfer or

---

that plaintiff was *not* bound by arbitration clause because defendant did not offer consideration in exchange for plaintiff's agreement to arbitrate). Similarly, "[a] contract *modification* must satisfy the same elements for a valid contract (offer, acceptance, and consideration) and preexisting obligations do not suffice for consideration." *All Am. Roofing, Inc. v. Zurich Am. Ins. Co.*, 934 N.E.2d 679, 689 (Ill. App. Ct. 2010) (emphasis added). Defendants failed to notify Plaintiff about the addition of the arbitration clause and failed to offer consideration in exchange for an agreement to arbitrate. Plaintiff did not take *any* action whatsoever to accept the offer to arbitrate. Under Illinois law, there is no agreement to arbitrate.

giving up of something of value to the other party." *Marzette v. Anheuser-Busch, Inc.*, 371 S.W.3d 49, 52 (Mo. App. E.D. 2012) (quoting *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 438 (Mo. App. W.D. 2010)).

Here, Defendants never clearly offered the arbitration agreement to Mr. Smith, and he never unequivocally accepted it. In fact, Defendants never even notified Mr. Smith that the arbitration provision was unilaterally added to the Plan after he terminated employment. Even when Mr. Smith requested a copy of the Plan Document and amendments to the Plan, he was only sent the 2018 SPD. Indeed, it was impossible for Mr. Smith to accept the terms of the arbitration provision, because he was never even informed that the arbitration clause was added in 2018.

However, *even if* Mr. Smith had received a copy of the arbitration amendment, he did not accept its terms. Indeed, there was *nothing* Mr. Smith could do to reject the terms of the arbitration clause: he did not work at Triad when the amendment was added and did not have the option to withdraw from the Plan without forfeiting his benefits.[8] The fact that Mr. Smith's ESOP account was not distributed to him until 2019 does not—and could not—establish unequivocal acceptance of the arbitration clause. *See, e.g., Kunzie*, 330 S.W.3d at 484 (stating that "[s]ilence generally cannot be translated into acceptance" and that continuing to work is not assent) (citation omitted). In short, the unequivocal acceptance required to form an amended contract between Mr. Smith and Defendants does not exist here.

Similarly, Defendants did not offer any consideration to Mr. Smith in exchange for acceptance of the arbitration provision. Mr. Smith ended his employment at Triad in 2016 and

---

[8] Under the Plan terms, Mr. Smith was not permitted to withdraw his benefits until 2019, a date after which the arbitration provision was added to the Plan. *See supra* Section II.B. In other words, Mr. Smith was *required* to continue participating in the Plan to receive the benefits he earned in 2015 and 2016. His participation is not an indication that he consented to the addition of the arbitration provision.

Triad ceased making contributions to Mr. Smith's ESOP account at that time. The arbitration provision was not added to the Plan until 2018. Thus, Triad did not offer Mr. Smith (and he did not accept) any additional contributions to his ESOP account after 2016, in exchange for an agreement to arbitrate his ERISA claims. Indeed, Defendants do not suggest that Mr. Smith received any consideration whatsoever in exchange for the unilateral amendment to the Plan Document. Under Missouri law, the total lack of consideration renders the arbitration clause unenforceable.[9] *See, e.g.*, *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 27 (Mo. App. W.D. 2008) (finding that employer did not offer adequate consideration in exchange for arbitration agreement, where employees were classified as "at will employees" and received no promise of continued employment); *Sniezek v. Kansas City Chiefs Football Club*, 402 S.W.3d 580, 584–86 (Mo. App. W.D. 2013) (similar).

Other courts have found, under a similar set of facts, that there is no agreement between the parties to arbitrate when the participant leaves employment before the plan document is amended to include an arbitration provision. In *Brown v. Wilmington Trust*, the court found that plaintiff was not bound by an arbitration amendment to the plan document, because she left employment before the amendment was executed. 2018 WL 3546186, at *4–5 (S.D. Ohio July 24, 2018) (further noting that "Plaintiff's cause of action accrued in 2014, when the ESOP transaction took place, more than two years before the Arbitration Procedure was added to the Plan."). In *Brown*, the court also found it significant that the plaintiff's claims—like Mr. Smith's claims

---

[9] In Illinois, courts find that an employer provides adequate consideration in exchange for an agreement to arbitrate, if he promises continued employment. *See, e.g.*, *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1131–32 (7th Cir. 1997) ("[a]n initial offer of employment may constitute consideration for an employee's promise[;]" similarly, "[a]n employer's specific promise to continue to employ an at-will employee may provide valid consideration for an employee's promise to forgo certain rights."). Defendants made no such promise here, where Plaintiff left Triad years before the arbitration clause was added.

here—were "wholly *statutory* in nature, brought under ERISA to remedy alleged breaches of fiduciary duty by the Trustee, which resulted in losses to the Plan," and were not brought simply to recoup losses to her personal account. *Id.* at *6. Further, the Court in *Brown* noted that the plaintiff's claims arose out of ERISA and that she was "not seeking any direct benefit from the Plan itself," insinuating that the outcome may be the same even if Plaintiff was still employed when arbitration amendment was added. *Id.*

The Eastern District of Texas reached a similar conclusion in *Casey v. Reliance Trust Company*, where the employer added an arbitration clause to the plan document after plaintiffs "already left their employment." 2019 WL 7403931, at *35 (E.D. Tex. Nov. 13, 2019). After evaluating the relationship between the parties, the court concluded that "there is no valid and enforceable arbitration agreement between the parties in the case." *Id.* at *38.

While Defendants cite to cases for the proposition that the plan terms control the agreement between the parties (Mot. at 8), this is not disputed.[10] Mr. Smith concurs he had an agreement with the Plan. However, he does *not* agree that Defendants' unilateral addition of an arbitration provision, years after Mr. Smith left Triad and without providing additional consideration, created

---

[10] The cases Defendants cite are not applicable here. *See* Mot. at 8 (citing *US Airways, Inc. v. McCutchen*, 569 U.S. 88 (2013) and *Heimeschoff v. Hartford Life & Acc. Inc. Co.*, 571 U.S. 99 (2013)). Both cases addressed claims related to individual benefits, based on the plan terms that were in effect when the participants were active plan participants. In *US Airways*, the Supreme Court found that equitable contract defenses could not override reimbursement terms contained in an ERISA plan; the court limited its holding to claims for relief under ERISA § 502(a)(3), explaining that the particular provision "does not . . . authorize appropriate equitable relief *at large*." *US Airways, Inc.*, 569 U.S. at 100 (internal quotations omitted). Similarly, *Heimeschoff* involved an individual claim for benefits. There, the court found that "a participant and a plan may agree by contract to a particular [reasonable] limitations period" for claims brought under ERISA § 502(a)(1)(B). *Heimeschoff*, 571 U.S. at 105–06. Again, the Court carefully curtailed its holding to apply only to § 502(a)(1)(B) of ERISA, noting that the *particular* provision of ERISA does not have its own statute of limitations. *Id.* at 108–09. Neither case stands for the proposition that a plan participant is bound to a plan term that unreasonably limits her ability to seek relief on behalf of the entire plan—particularly one that was added after the participant left her employment.

a valid *amended* agreement compelling Smith to arbitrate his ERISA claims. Because Mr. Smith did not unequivocally accept that modification (and how could he, when he was never informed of it), the parties never formed an amended contract that included the arbitration provision.

In sum, no valid agreement to arbitrate exists: Defendants failed to notify Mr. Smith that they added an arbitration agreement to the Plan; Mr. Smith could not "unequivocally accept" an offer he was unaware of; and Defendants failed to provide any consideration in exchange for the agreement to arbitrate. Because Mr. Smith and Defendants never had a valid, contractual agreement to arbitrate, Defendants' motion to compel arbitration must be denied.

### B. *Dorman* is Factually Distinguishable and Unpersuasive

*Dorman v. Charles Schwab Corporation*, 780 F. App'x 510 (9th Cir. 2019), which Defendants rely upon in their opening brief, is factually distinguishable from the instant situation and otherwise unpersuasive. First, the *Dorman* plaintiff had an agreement to arbitrate because he *physically signed* and agreed to various arbitration agreements during the course of his employment. *See Dorman v. Charles Schwab & Co. Inc.*, 2018 WL 467357, at *2, *4 (N.D. Cal. Jan. 18, 2018). Importantly, Mr. Dorman continued to work for his employer after the arbitration clause was added to his Plan. *Dorman*, 780 F. App'x at 513. As discussed *supra*, here, Mr. Smith did not agree to arbitrate his ERISA claims against the Triad ESOP because his employment at Triad ended approximately two years before the arbitration clause was added to the Plan. Indeed, Defendants did not take any action to ensure that Mr. Smith was aware of the addition of the arbitration clause and did not give him an opportunity to accept or reject it. Thus, *Dorman* is factually distinguishable because the *Dorman* plaintiff had an agreement to arbitrate his claims, while Mr. Smith does not.

11

Moreover, as this Court is aware, *Dorman* is not binding authority. Not only is *Dorman* unpublished and nonbinding on courts in the Seventh Circuit,[11] the law in the Ninth Circuit is unsettled. The Ninth Circuit—just one year before issuing the unpublished *Dorman* decision— held in *Munro v. University of Southern California*, 896 F.3d 1088, 1093-94 (9th Cir. 2018) that a claim brought under § 502(a)(2) could not be settled for individual relief, because it was for relief on behalf of the plan. Thus, the ERISA claims under § 502(a)(2) belong to the plan, not individual plaintiffs, and are outside of the scope of the arbitration provision in plaintiffs' employment agreement. *Munro* squarely conflicts with *Dorman*'s holding that breach of fiduciary duty claims are "inherently individualized." The unsettled state of the law in the Ninth Circuit makes *Dorman*, which is already nonbinding, even less persuasive. This Court should not give any weight to a factually distinct, unpublished, nonprecedential decision from another Circuit that directly conflicts with another decision from the same Circuit.

C.      **Even if Mr. Smith Entered into an Arbitration Agreement, the Agreement is Unenforceable, because the FAA Prohibits Enforcement of an Arbitration Provision That Eliminates Remedies Provided for By Statute**

Even if Mr. Smith entered into a valid arbitration agreement with Defendants (which he did not), the agreement would be unenforceable, because the arbitration clause improperly eliminates Plan-wide remedies granted to Mr. Smith by statute and explicitly recognizes that the clause should be "rendered null and void in all respects" if any portion of the arbitration clause is found to be unenforceable or invalid.[12]

---

[11] Defendants lack any Seventh Circuit authority supporting the position that Mr. Smith's claims are arbitrable and cite only one district court case within the Seventh Circuit that finds ERISA claims are arbitrable. *See Lusk v. AmeriServ. Fin. Inc.*, U.S. Dist. LEXIS 55775, at *18–21 (S.D. Ind. July 31, 2007). *Lusk* is not even on point, as it found that certain ERISA claims were arbitrable, but *did not* address claims brought under ERISA § 502(a)(2) on behalf of the plan.

[12] Article 22.1(b) of the arbitration amendment states that "[i]n the event a court of competent jurisdiction were to find these requirements to be unenforceable or invalid, then the entire

Defendants rely on the Federal Arbitration Act ("FAA") as the driving force behind their unilaterally added arbitration provision, citing the FAA's presumption in favor of arbitration. But the FAA explicitly *prohibits* enforcement of an arbitration provision that eliminates statutorily provided remedies. The Supreme Court addressed this issue in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Incorporated*, stating in an antitrust class action that it would "have little hesitation in condemning" an agreement to arbitrate if it "operated . . . as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations." 473 U.S. 614, 637 n.19 (1985). The Supreme Court affirmed this holding as recently as 2013, stating that arbitration agreements were only enforceable to the extent that the agreements did not "operat[e] ... as a prospective waiver of a party's *right to pursue* statutory remedies." *American Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013) (emphasis in original).[13]

The arbitration provision at issue eliminates Mr. Smith's right to pursue Plan-wide statutory remedies expressly granted to Plaintiff under ERISA § 502(a)(2), which provides that "a participant, beneficiary, or fiduciary" may bring a civil action "for appropriate relief under section 1109 of this title." 29 U.S.C. 1132(a)(2). In turn, ERISA § 409 authorizes a participant to seek to restore all "losses to the plan" resulting from any breach of fiduciary duty. 29 U.S.C § 1109. It

---

Arbitration Procedure (i.e., all of this Section 22.1) shall be rendered null and void in all respects as to the particular claim that is the subject of that court's ruling." ECF No. 31-4 Art. 22.1(b).

[13] Numerous federal appellate courts have followed the Supreme Court's reasoning and held that arbitration agreements that eliminate statutory rights or the ability to pursue statutory remedies are unenforceable. *See Kristian v. Comcast Corp.*, 446 F.3d 25, 48 (1st Cir. 2006) (holding that arbitration provision could not eliminate treble damages provided for by antitrust statute); *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 & n.14 (5th Cir. 2003) (arbitration clause that eliminated punitive damages provided for under Title VII was unenforceable); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1178 (9th Cir. 2003) (holding "unenforceable" an arbitration agreement that "fail[ed] to provide for all the types of relief that would otherwise be available in court")(citation omitted); *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998) (holding that arbitration agreement's prohibition on punitive damages under Title VII was unenforceable).

also authorizes the disgorgement of profits and other equitable relief, including removal of the fiduciary. *Id.* In other words, ERISA provides participants broad remedies for fiduciary violations, including the right to recover losses, on behalf of *the entire plan*. *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) (ERISA participant suing under § 502(a)(2) to get relief under § 409 does so in a "representative capacity" and "on behalf of" the plan to recover all losses suffered by the plan). That is exactly what Mr. Smith seeks to do here and Defendants' arbitration provision improperly attempts to eliminate his statutory right to do so.

Defendants incorrectly rely upon non-ERISA decisions generically upholding class action waivers in support of their position that the waiver of plan-wide remedies should be enforced. Mot. at 11-12. The decisions Defendants rely upon are inapposite, because the plaintiffs' claims in those cases were not grounded in a statute expressly permitting a participant to obtain relief on behalf of other plan participants.[14] Indeed, even without a certified class, ERISA expressly allows Plaintiff Smith to bring suit to restore losses to the Plan for the benefit of all Triad ESOP participants. Thus, Section 22.1 is unenforceable, because it improperly attempts to eliminate statutory remedies expressly provided by ERISA § 409, including the restoration of all Plan-wide losses to the ESOP.

Consistent with this understanding of ERISA, courts in this district have recognized that "ERISA grants the courts the power to shape an award so as to make the *injured plan* whole," in cases brought under ERISA § 502(a)(2). *Neil v. Zell*, 767 F. Supp. 2d 933, 940 (N.D. Ill. 2011) (quoting *Free v. Briody*, 732 F.2d 1331, 1337 (7th Cir. 1984)) (emphasis in original). Because the arbitration provision attempts to eliminate a remedy that ERISA expressly grants to Mr. Smith –

---

[14] Defendants also ignore a key aspect of the cases upholding a class waiver provision: in those cases, the courts found a valid arbitration agreement before considering the validity of a class waiver. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018) (noting that there was no suggestion that the arbitration agreements themselves were unenforceable).

the recovery of Plan-wide losses, including losses attributable to other participants' accounts – it is unenforceable under the FAA.[15]

Relatedly, Section 22.1(b) states that "[i]n the event a court of competent jurisdiction were to find these requirements to be unenforceable or invalid, then the entire Arbitration Procedure (*i.e.*, all of this Section 22.1) shall be rendered null and void in all respects as to the particular claim that is the subject of that court's ruling." ECF No. 31-4, Art. 22.1(b). Thus, if this Court determines that the arbitration clause improperly eliminates Mr. Smith's right to pursue statutory remedies on behalf of the Plan as expressly provided by ERISA,[16] the Court should find the *entire* arbitration clause invalid—and not simply the waiver of Plan-wide relief, pursuant to the terms of the arbitration agreement itself.

## V.  Conclusion

For the reasons stated above, Plaintiff respectfully requests that the Court deny Defendants' motion and permit the case to proceed in this Court.

---

[15] At the very least, if the Court finds that the parties did agree to arbitrate and that the arbitration agreement is enforceable, the provision limiting the damages to Mr. Smith's individual damages should be found severable and unenforceable. As discussed *supra* in note 13, numerous federal appellate courts have found that arbitration provisions purporting to limit remedies provided for by statute (*e.g.*, treble damages under antitrust law and punitive damages under Title VII) are unenforceable and should be severed to the extent the parties must arbitrate.

[16] Plaintiff maintains that the Court need not reach this question, because there is no valid arbitration agreement.

July 2, 2020                          Respectfully submitted,


                                      Michelle C. Yau
                                      _____
                                      Michelle C. Yau, *pro hac vice*
                                      Mary J. Bortscheller, Illinois Bar: 6304457
                                      Daniel R. Sutter, *pro hac vice*
                                      Cohen Milstein Sellers & Toll PLLC
                                      1100 New York Ave. NW ● Fifth Floor
                                      Washington, DC 20005
                                      (202) 408-4600
                                      myau@cohemilstein.com
                                      mborscheller@cohenmilstein.com
                                      dsutter@cohenmilstein.com

                                      Carol V. Gilden, Illinois Bar: 6185530
                                      190 South LaSalle Street, Suite 1705
                                      Chicago, IL 60603
                                      (312) 357-0370
                                      cgilden@cohenmilstein.com


                                      ***Attorneys for Plaintiffs***

**CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2020, I electronically filed Plaintiff's Memorandum in

Opposition to Defendants' Motion to Compel Arbitration and/or Dismiss with the Clerk of the

Court using the ECF, who in turn sent notice to the following:

Matthew D. Grabell
Ford Harrison LLP
271 – 17th Street NW, Suite 1900
Atlanta, GA 30363

Benjamin P. Fryer
Ford & Harrison LLP
6000 Fairview Road, Suite 1415
Charlotte, NC 28210

Dated:    July 2, 2020                          /s/ Daniel R. Sutter
                                                Daniel. R. Sutter

17