IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES SMITH, on behalf of himself and all others similarly situated, and on behalf of the TRIAD MANUFACTURING, INC. EMPLOYEE STOCK OWNERSHIP PLAN, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | NO.: 1:20-CV-02350 <br><br> JUDGE: GUZMAN <br><br> MAG. JUDGE: KIM |
| Plaintiffs, | | |
| vs. | | |
| GREATBANC TRUST COMPANY; THE BOARD OF DIRECTORS OF TRIAD MANUFACTURING, INC.; DAVID CAITO; ROBERT HARDIE; and MICHAEL McCORMICK, | | |
| Defendants. | | |

**TRIAD DEFENDANTS' REPLY IN SUPPORT
OF MOTION TO COMPEL ARBITRATION AND/OR DISMISS**

Plaintiff's Response in Opposition to the Motion to Compel Arbitration and/or Dismiss filed by the Board of Directors of Triad Manufacturing, Inc, David Caito, Robert Hardie, and Michael McCormick (the "Triad Defendants") offers two contentions to evade the mandatory arbitration provision in the Triad Manufacturing, Inc. Employee Stock Ownership Plan (the "Plan") document. First, Plaintiff argues that he didn't individually consent to the mandatory arbitration clause. Second, Plaintiff argues that mandatory arbitration would deny him a statutory right to obtain class relief on behalf of the Plan under Section 502(a)(2) of the Employee Retirement Income Security Act ("ERISA") (29 U.S.C. § 1132(a)(2)). Plaintiff's arguments fail because (1) *the Plan consented* to arbitration, which is what matters for purposes of Plaintiff's breach of fiduciary duty claims brought on behalf of the Plan; (2) Plaintiff did consent to arbitration individually by his continued participation in the Plan; and (3) Plaintiff can obtain the same relief

Page 1 of 12

he seeks in this lawsuit through arbitration based on the precedent set forth in *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248 (2008) and its progeny. The Triad Defendants' motion should, therefore, be granted.

## ARGUMENT

I.      <u>This Is A Case Of First Impression In The Seventh Circuit</u>

As an initial matter, Plaintiff correctly notes that the Triad Defendants have not cited to Seventh Circuit precedent on the issue of whether a mandatory arbitration clause included in a defined contribution employee benefit plan document is applicable to breach of fiduciary duty claims brought on behalf of the employee benefit plan under ERISA §§ 502(a)(2) and (a)(3). Nor did Plaintiff. That is because this is an issue of first impression for this Circuit. As a result, Plaintiff's assertion that the lack of Seventh Circuit precedent in the Triad Defendants' Motion should weigh against the Triad Defendants request for relief is erroneous, particularly in light of recent and highly persuasive Ninth Circuit authority directly on point.

II.      <u>The Plan Consented To Arbitration</u>

Plaintiff principally opposes the Triad Defendants' motion on the basis that Plaintiff did not personally consent to the mandatory arbitration provision in the 2018 Plan amendment. However, Plaintiff's argument wholly ignores that it is *the Plan's consent* to arbitration that matters for Plaintiff's breach of fiduciary duty claims, not the individual Plaintiff's consent. Breach of fiduciary duty claims brought on behalf of the Plan under ERISA § 502(a)(2) belong to the Plan and not the individual. *See Dorman v. Charles Schwab Corp.*, 780 Fed. Appx. 510, 514 (9th Cir. 2019) ("[h]ere the Plan did consent in the Plan document to arbitrate all ERISA claims"); *see also Ramos v. Natures Image, Inc.*, No. 19-7094, 2020 U.S. Dist. LEXIS 88181, at *15 (C.D. Cal. Feb. 19, 2020) (quoting *Dorman*, 780 Fed. Appx. at 513) (further citing *Munro v. Univ. of S.*

*Cal.*, 896 F.3d 1088, 1092 (9th Cir. 2018) ("[i]n both *Munro* and *Dorman*, the Ninth Circuit was clear: such claims belong to a plan-not an individual"); *see also Smith v. Medical Benefit Adm'rs Group, Inc.*, 639 F.3d 277, 282 (7th Cir. 2011) (holding that an ERISA 502(a)(2) claim is brought on behalf of the Plan and not the individual). Therefore, "[t]he relevant question is whether the Plan agreed to arbitrate the 502(a)(2) claims." *Dorman*, 780 Fed. Appx. at 512. Here, it is undisputed that the Plan agreed to arbitrate the ERISA claims that are the subject of this lawsuit through the adoption of the Plan amendment on July 17, 2018. *See Dorman*, 780 Fed. Appx. at 514 (granting the defendants' motion to compel arbitration because "the Plan did consent in the Plan document to arbitrate all ERISA claims."). Accordingly, Plaintiff is required to arbitrate his breach of fiduciary duty claims brought under ERISA.[1]

Plaintiff relies upon two cases in support of his argument that the arbitration clause shouldn't apply: *Brown v. Wilmington Trust, N.A.*, No. 3:17-cv-250, 2018 U.S. Dist. LEXIS 123656 (S.D. Ohio July 24, 2018) and *Coleman v. Reliance Trust Co.*, No. 4:18-CV-424, 2019 U.S. Dist. LEXIS 223195 (E.D. Texas Nov. 13, 2019). Those cases are factually and legally distinguishable from the Ninth Circuit's decision in *Dorman*.

Importantly, the Ohio district court in *Brown* was persuaded by the California district court's decision in *Dorman* – a decision later overturned by the Ninth Circuit. *Brown*, 2018 U.S. Dist. LEXIS 123656, at *12-14. Even more critically, the participant in *Brown* completely cashed out of the ESOP *before* the Plan amendment mandating arbitration was adopted. *Id.* at *10. This led the *Brown* court to declare that, "[a]lthough plan administrators and employers have broad

---

[1] Importantly, the Triad Defendants have a duty and requirement to enforce the Plan according to its terms. Specifically, "once a plan is established, the administrator's duty is to see that the plan is maintained pursuant to that written instrument." *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 108 (2013). That is exactly what the Triad Defendants have done via the instant motion.

discretion to modify the terms of a plan, those modifications do not necessarily bind individuals like Plaintiff, who have ceased all participation in the plan and whose cause of action accrued prior to the modification." *Id.* at *13-14. Only under those narrow "circumstances presented here" did the *Brown* court "conclude[] that Plaintiff is not bound by the Arbitration Procedure." *Id.* But those are not the circumstances presented in the instant case where Plaintiff continued his participation in the Plan after the amendment. As such, the *Brown* court's application of an overturned legal conclusion to a set of specific and critically different facts is of no relevance here.

*Coleman* is also factually distinguishable from this case and *Dorman*. In *Coleman*, the plaintiff only sued the former trustee for the plan, and not the plan administrator or the individual fiduciaries of the plan itself. *Coleman*, 2019 U.S. Dist. LEXIS 223195 at *9. Conversely, in this case, Plaintiff has brought suit on behalf of the Plan against the Triad Defendants, who are the individual fiduciaries of the Plan itself, for their alleged breach of their responsibilities under the terms of the Plan. *See* ECF No. 1, ¶¶ 22, 51, 96-97, 101, 123, 124, 125, 128, 138. Moreover, in *Coleman* the plan amendment imposing mandatory arbitration was adopted *after* the plan was terminated. *Coleman*, 2019 U.S. Dist. LEXIS 223195, at *41 (stating that the plan was terminated in 2017 and on May 18, 2018, the plan was amended to include the arbitration provision). Specifically, the settlors of the plan in *Coleman* attempted to shield themselves from lawsuits in court for their misuse of plan assets at a time when the plan *no longer existed*. *Id*. Clearly, a plan that no longer exists cannot consent to anything, let alone an arbitration clause. In sharp contrast, the amendment requiring arbitration in this case was adopted three years after the Plan was created and while Plaintiff was still a participant in the active Plan. Therefore, *Coleman* has no application here.

Finally, Plaintiff emphasizes that the individual plaintiff in *Dorman* signed an employment

document which provided for mandatory arbitration. However, a review of the Ninth Circuit's decision in *Dorman* unequivocally reveals that the court's decision was not premised upon the agreement signed by the individual plaintiff; rather, the court solely relied upon the fact that arbitration was required because the party who consents to an arbitration clause for breach of fiduciary duty claims brought on behalf of a plan is the plan itself. *Dorman,* 780 Fed. Appx. at 512-514. In fact, the Ninth Circuit's opinion in *Dorman* doesn't even mention the individual plaintiff's employment agreement. Indeed, applying *Dorman*, the court in *Ramos* denied a motion to compel arbitration brought by a class for relief under ERISA § 502(a)(2) because the employees had only signed individual employment agreements that contained arbitration clauses, but did not have consent to arbitrate from the plan itself. 2020 U.S. Dist. LEXIS 88181 at *18-19 (C.D. Cal. Feb. 19, 2020) (holding "[a]s such, Defendants cannot arbitrate these claims without consent from the plan to arbitrate."). That same rule should equally apply in this case where the Plan has consented to arbitration and the breach of fiduciary duty claims brought are for relief on behalf of the Plan.

### III. Plaintiff Consented to the Arbitration Provision

Even if the Plan's consent alone is not enough (which the Triad Defendants ardently believe it is), Plaintiff did individually consent to the arbitration clause by continuing to participate in the Plan after the arbitration amendment was adopted. "A plan participant agrees to be bound by a provision in the plan document when he participates in the plan while the provision is in effect." *Dorman*, 780 Fed. Appx. at 512-513; *see also Chappel v. Lab Corp. of Am.*, 232 F.3d 719, 723-724 (9th Cir. 2000). This rule is premised upon *participation*, and for an important reason. ERISA benefit plans must be administered according to their terms. 29 U.S.C. § 1102(a)(1) ("every employee benefit plan shall be established and maintained pursuant to a written

instrument."). For efficient administration, employee benefit plans must have a way to measure whether its participants consent to the terms of the plan document. The only way to perform that measurement is by acknowledging their agreement to the terms of the plan when they become and remain a participant. For that reason, the Plan document is deemed the contract. *See e.g.*, *Coley v. Pitney Bowes*, 34 F.3d 714, 717 (8th Cir. 1994) (characterizing the plan document as a contract).

Here, Plaintiff was employed by Triad in 2015 at the time the ESOP was created and continued his participation in the ESOP until 2019. Plaintiff agreed to the terms of the Plan when he became a participant in 2015. That agreement included (1) Plaintiff's consent that that in order to withdraw his shares and obtain the money contributed into his account on his behalf, he would have a waiting period, and (2) Plaintiff's consent to the arbitration clause added prior to the withdrawal of his shares. Plaintiff could have ceased his participation early and not received any money from the Plan, thereby expressing his disagreement with the terms of the Plan. However, did not do so in order to receive a monetary benefit.

Plaintiff cannot plead ignorance as to the terms of the Plan document which governed his participation. During the four year period that Plaintiff was a participant in the Plan, Plaintiff had the enumerated rights set forth in Section 104(b)(4) of ERISA to request Plan documents to better understand his rights under the terms of the Plan. 29 U.S.C. § 1024(b)(4). At no time during his participation in the Plan did he exercise those rights. Those rights lasted until a substantial period of time *after* the mandatory arbitration clause was adopted via a Plan amendment on July 27, 2018.

During that period of time, Plaintiff received regular Plan statements which provided his total vested balance every year from the date the ESOP was created until he cashed out. Despite receiving these statements, Plaintiff waited two years after the Plan adopted the mandatory arbitration clause and one year after he cashed out of the Plan to seek any information about the

Plan or his rights under it until preparing for this lawsuit. Plaintiff was clearly on notice of certain aspects of the Plan, including but not limited to the value of his Plan account.

As a result of both the Plan's consent and Plaintiff's consent, the Plan document's mandatory arbitration clause should be applied.

### IV. The Plan Document, Not the SPD, Controls

Plaintiff contends that in response to a request for documents from the Plan, he received a copy of the Summary Plan Description ("SPD") which does not contain the same language as the Plan document regarding arbitration. However, "[a]n SPD does not determine the enforceable terms of the plan." *Colvill v. Life Ins. Co.*, No. 17-C-1290, 2018 U.S. Dist. LEXIS 145273, at *6 (E.D. Wis. Aug. 27, 2018) (citing *CIGNA Corp. v. Amara*, 536 U.S. 421 (2011)). When an SPD and a plan document conflict, the plan document governs. *See Schwartz v. Prudential Ins. Co.*, 450 F.3d 697, 699 (7th Cir. 2006) (quoting *Health Cost Controls of Illinois, Inc. v. Washington*, 187 F.3d 703, 711 (7th Cir. 1999) (holding "[w]hen, however, the plan and summary plan description conflict, the former governs, being more complete - the original, as it were, which the summary plan description excerpts and translates into language that may be imprecise…")).

In this case, it is undisputed that the controlling document is the Plan document. The Plan document even states that, "[i]n the case of any conflict between the content of this booklet and the content of the plan or the related trust agreement, the terms of the plan or the trust agreement will control." (ECF No. 46-2, PageID#345). Moreover, the SPD provides that arbitration may be required for certain claims, and further directs participants to reference the arbitration procedures in the Plan document for more information about the arbitration requirements. While the SPD contains stock language regarding general ERISA rights that is legally required to be included in an SPD, that language does not conflict with the Plan document's arbitration requirement, which

is even referenced in the SPD itself. And even if it did conflict, the terms of the Plan document would control.[2] The claims and appeals procedures in the SPD as well as in the Plan document itself make absolutely clear that arbitration is required for certain specific claims, including those asserted by Plaintiff in this case. Therefore, Plaintiff's argument relating to the SPD is meritless.[3]

### V. **Arbitration Does Not Deprive Plaintiff or the Class Of Any Statutory Rights**

Finally, Plaintiff incorrectly argues that arbitration is impermissible because it would deprive Plaintiff of statutory rights under ERISA § 502(a)(2) to seek class relief on behalf of the Plan. However, "[w]hen an individual participant agrees to arbitrate, he does not give up any substantive rights that belong to other Plan participants." *Dorman*, 780 Fed. Appx. at 514. There is nothing that prohibits other Plan participants from seeking the same relief under ERISA § 502(a)(2) that Plaintiff could seek in arbitration. Put simply, Plan-wide relief can still be achieved through individual arbitration. For that precise reason, the Ninth Circuit in *Dorman* held that the class-action waiver in the arbitration clause was valid and did not violate the Plaintiff's ability to seek relief under ERISA § 502(a)(2). *Id*.

Specifically, the Supreme Court made clear in *LaRue* that when a claim is made under ERISA § 502(a)(2), while "it is the plan and not the individual beneficiaries and participants that benefit from winning a claim for breach of fiduciary duty….[ERISA § 502(a)(2)] does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual

---

[2] It should be noted that the mandatory arbitration clause doesn't require arbitration of all claims, but only those enumerated in the provision itself.

[3] Moreover, Plaintiff's factual contentions regarding receipt of various Plan documents are not properly before the Court. Plaintiff attached a Declaration from his attorney purporting to authenticate a letter he personally received dated March 27, 2020. (ECF No. 46, PageID#311; ECF No. 46-1; ECF No. 46-2; ECF No 46-3). Plaintiff then uses this letter and Declaration to claim that he requested a copy of the Plan document and any effective amendments, but did not receive those documents in response. *Id*. The Declaration is, therefore, inadmissible hearsay regarding matters not plead or referenced in Plaintiff's Complaint. Moreover, because Plaintiff did not attach a copy of his request for various Plan documents documenting what he actually requested, this Court has no basis upon which to determine whether the hearsay assertions in the Declaration are accurate.

account." *Munro*, 896 F.3d at 1093 (quoting *LaRue*, 552 U.S. at 256). As summarized by the Seventh Circuit, in the context of a defined contribution plan, "malfeasance by a plan fiduciary that adversely affects the value of the assets held in such an account will support a suit under sections 409 and 502(a)(2) regardless of whether the wrongdoing affects one account or all accounts in the plan." *Smith*, 639 F.3d at 283 (citing *LaRue*, 552 U.S. at 256). The same is true here where the Plan is a defined contribution plan (an ESOP) and neither the Plaintiff nor any other participant who chooses to seek relief on behalf of the Plan for their individual Plan account under ERISA § 502(a)(2) would be denied the opportunity to obtain such relief through individual arbitration.

In support of his argument, Plaintiff asserts that the Ninth Circuit's holding in *Dorman* conflicts with the Ninth Circuit's holding in *Munro*. Plaintiff further argues that in *Munro*, the Ninth Circuit held that a claim under ERISA § 502(a)(2) "could not be settled for individual relief, because it was for relief on behalf of the plan." Plaintiff's reading of *Munro* is clearly incorrect. Critically, in *Munro*, the plan did not consent to arbitration through the plan document. *Munro*, 896 F.3d at 1090. Instead, in *Munro*, each individual plaintiff signed their own individual arbitration agreement as part of their employment contract. *Id*. Thereafter, the employees filed a class action lawsuit for breach of fiduciary duty under ERISA § 502(a)(2). The Ninth Circuit held that "[b]ecause the parties consented only to arbitrate claims brought ***on their own behalf***, and because the Employees' present claims ***are brought on behalf of the Plans***, we conclude that the present dispute falls outside the scope of the agreements." *Munro*, 896 F.3d at 1092. The decision in *Munro* actually supports *Dorman* because in *Dorman* the Plan itself consented to the arbitration and the claims were brought on behalf of the Plan.

Plaintiff's assertion is also contradicted by *Ramos*, a recent case from the United States

Page 9 of 12

District Court for the Central District of California which analyzes both *Dorman* and *Munro*. *Ramos*, 2020 U.S. Dist. LEXIS 88181, at *16. In *Ramos*, the Court held "[i]n short, *Munro* and *Dorman* hold that while ERISA claims are arbitrable, a standard employment arbitration agreement does not cover claims for breach of fiduciary duty because those claims belong to the plan, at least when those claims are brought as part of a class action." *Ramos*, 2020 U.S. Dist. LEXIS 88181, at *16 (citing *Munro*, 896 F.3d at 1092) (further citing *Dorman*, 780 Fed. Appx. at 513). Finally, in *Dorman*, the Ninth Circuit even cites to *Munro's* observation that "*LaRue* stands for the proposition that a defined contribution plan participant can bring a 502(a)(2) claim for the plan losses in her own individual account." *Dorman*, 780 Fed. Appx. at 514 (citing *LaRue*, 552 U.S. at 256); (also citing *Munro*, 896 F.3d 1093)). Therefore, Plaintiff is incorrect that the law in the Ninth Circuit related to this issue is unsettled. On the contrary, it is both well-developed and settled.

The precedent from both the Supreme Court and the Ninth Circuit demonstrate that an ERISA § 502(a)(2) claim belongs to the Plan whether adjudicated in arbitration or federal court. However, an individual plaintiff whose case proceeds in arbitration has all of the same rights under ERISA § 502(a)(2) to seek relief on behalf of a plan for his individual account when the plan is a defined contribution plan. Therefore, an individual participant in arbitration does not waive or relinquish any of the rights of the plan by engaging in individual arbitration. As a result, the class-action waiver in the Plan document's arbitration provision is valid and enforceable.

**CONCLUSION**

For the foregoing reasons and those set forth in their initial brief, the Triad Defendants respectfully request that this Honorable Court apply the same reasoning utilized by the Ninth Circuit and hold that the arbitration clause and class action waiver in the Plan document are

enforceable, and enter an Order compelling arbitration, or in the alternative, dismiss this lawsuit so the parties may engage in arbitration.

/s/ Matthew D. Grabell – 6312929
FORD & HARRISON, LLP
271 – 17th Street, NW, Suite 1900
Atlanta, GA 30363
mgrabell@fordharrison.com
Telephone:	(404) 888-3820
Benjamin P. Fryer
FORD & HARRISON LLP
(admitted *pro hac vice*)
NC Bar No. 39254
6000 Fairview Road, Suite 1200
Charlotte, NC  28210
bfryer@fordharrison.com
Telephone:	(980) 282-1900
Facsimile:	(980) 282-1949

Attorneys for Board of Directors of Triad Manufacturing, Inc., David Caito, Robert Hardie, and Michael McCormick

## CERTIFICATE OF SERVICE

       The undersigned hereby certifies that on today's date, July 23, 2020, he served a copy of the foregoing Triad Defendants Reply in Support of Motion to Compel Arbitration, or in the alternative, Dismiss on all parties via operation of the Court's CM/ECF electronic filing system and to all parties unable to receive electronic service, at the address set forth below. In addition, a courtesy copy has not been delivered to the Court due to the suspension of Local Rules pursuant to the United States for the Northern District of Illinois Fifth Amended General Order 20-0012.

       /s/ Matthew D. Grabell – 6312929
FORD & HARRISON, LLP
271 – 17th Street, NW, Suite 1900
Atlanta, GA 30363
mgrabell@fordharrison.com
Telephone:   (404) 888-3820
Benjamin P. Fryer
FORD & HARRISON LLP
(admitted *pro hac vice*)
NC Bar No. 39254
6000 Fairview Road, Suite 1200
Charlotte, NC 28210
bfryer@fordharrison.com
Telephone:   (980) 282-1900
Facsimile:   (980) 282-1949

Attorneys for Board of Directors of Triad Manufacturing, Inc., David Caito, Robert Hardie, and Michael McCormick