**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES SMITH, on behalf of himself and all others similarly situated, and on behalf of the Triad Manufacturing, Inc. Employee Stock Ownership Plan,<br><br>Plaintiff,<br><br>v.<br><br>GREATBANC TRUST COMPANY, THE BOARD OF DIRECTORS OF TRIAD MANUFACTURING, INC., DAVID CAITO, ROBERT HARDIE, and MICHAEL McCORMICK,<br><br>Defendants. | ) | No. 20 C 2350<br><br>Judge Ronald A. Guzmán |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the motion of certain defendants to compel arbitration and/or dismiss, which is denied for the reasons explained below.

**BACKGROUND**

Plaintiff, James Smith, is a former employee of Triad Manufacturing, Inc. ("Triad") and a former participant in Triad's Employee Stock Ownership Plan (the "Plan" or the "ESOP"), a defined contribution plan. Smith brought this action on his own behalf and on behalf of the Plan and its participants. His claims arise from the creation of the ESOP in December 2015, when defendants caused employees' retirement accounts in the ESOP to purchase 1.83 million shares of Triad's voting common stock at the price of $58.05 per share ($106.2 million in the aggregate) from the selling shareholders, Triad's co-presidents and defendants David Caito, Robert Hardie, and Michael McCormick (the "Individual Defendants"). Smith alleges that the Individual Defendants, who also served on Triad's Board of Directors (the "Board," which is another defendant), "hand-picked" defendant Greatbanc Trust Company to act as the ESOP Trustee for the transaction, (ECF No. 1, Class Action Compl. ¶ 6), and that all of the defendants caused the ESOP to overpay the Individual Defendants for Triad stock. Smith further alleges that defendants breached their fiduciary duties and engaged in prohibited transactions, causing losses to the Plan and its participants. Smith seeks declaratory, injunctive, and equitable relief under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1104, 1105, 1106, 1109, and 1132(a).

The Board and the Individual Defendants (collectively, the "Triad Defendants") move to compel arbitration of plaintiff's claims, or, in the alternative, to dismiss them pursuant to a class-action waiver contained in the relevant arbitration provision.

## DISCUSSION

Smith worked for Triad from 2015 to 2016. When he left Triad in 2016, Smith was not yet able to remove his retirement savings from the ESOP. Smith withdrew his entire account balance in 2019, the earliest he could do so under the terms of the Plan.

The Triad Defendants contend that Smith must be compelled to arbitrate his claims under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"), pursuant to an arbitration amendment added to the Plan document in 2018, which was after plaintiff's departure from Triad. The amendment states as follows in relevant part:

> [A]ll Covered Claims must be resolved exclusively pursuant to the provisions of this Section 22.1 (the "Arbitration Procedure").
>
> (a) Covered Claims. Any claim made by or on behalf of an Eligible Employee, Participant or Beneficiary (a "Claimant") which arises out of, relates to, or concerns this [Plan], including without limitation, any claim for benefits under the [Plan]; any claim asserting a breach of, or failure to follow, the [Plan]; and any claim asserting a breach of, or failure to follow, any provision of ERISA . . . , including without limitation claims for breach of fiduciary duty, . . . (collectively, "Covered Claims"), shall be resolved exclusively by binding arbitration administered in accordance with the National Rules for the Resolution of Employment Disputes (the "Rules") of the American Arbitration Association ("AAA") then in effect. Under no circumstances are the AAA Supplementary Rules for Class Arbitrations to be used. . . .
>
> (b) No Group, Class, or Representative Arbitrations. All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis. Each arbitration shall be limited solely to one Claimant's Covered Claims, and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any Eligible Employee, Participant or Beneficiary [("Participant"]) other than the Claimant. For instance, with respect to any claim brought under ERISA § 502(a)(2) to seek appropriate relief under ERISA § 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's individual Account resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely to Claimant's individual Account, and/or (iii) such other remedial or equitable relief as the arbitrator(s) deems proper so long as such remedial or equitable relief does not include or result in the provision of additional benefits or monetary relief to any [Participant] other than the Claimant,

> and is not binding on the Plan Administrator or Trustee with respect to any [Participant] other than the Claimant. The requirement that (x) all Covered Claims be brought solely in a Claimant's individual capacity and not in a purported group, class, collective, or representative capacity, and (y) that no Claimant shall be entitled to receive, and shall not be awarded, any relief other than individual relief, shall govern irrespective of any AAA rule or decision to the contrary and is a material and non-severable term of this Section 22.1. . . . In the event a court of competent jurisdiction were to find these requirements to be unenforceable or invalid, then the entire Arbitration Procedure (i.e., all of this Section 22.1) shall be rendered null and void in all respects as to the particular claim that is the subject of that court's ruling.

(ECF No. 31-4, Third Am. to the Triad ESOP at 1-3.) Plaintiff argues that the provision is unenforceable against him because he was never notified of it, never accepted this modification to the Plan, and never received consideration in exchange for an acceptance. He also contends that it is unenforceable under the FAA because it eliminates his right to pursue Plan-wide remedies provided for in ERISA § 502(a)(2).

The FAA governs the enforcement of arbitration agreements. *Int'l Ins. Co. v. Caja Nacional de Ahorro y Seguro*, 293 F.3d 392, 395 (7th Cir. 2002). It "evinces a national policy favoring arbitration" and "requires federal courts to place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1059-60 (7th Cir. 2018) (internal quotation marks and citations omitted); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). To compel arbitration, a movant must show (1) an enforceable arbitration agreement; (2) a dispute within the scope of the arbitration agreement; and (3) the opposing party's refusal to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). The third element is satisfied because plaintiff refuses to arbitrate. "Once the party seeking arbitration has shown those elements, the burden shifts to the party opposing arbitration to demonstrate that the arbitration agreement is unenforceable or that the claims are unsuitable for arbitration." *Mecum v. Weilert Custom Homes, LLC*, 239 F. Supp. 3d 1093, 1095 (N.D. Ill. 2017).

As an initial matter, the Court assumes arguendo that ERISA claims are generally arbitrable. Although the Seventh Circuit has not yet ruled on this issue, several other circuits have held that agreements to arbitrate ERISA claims are generally enforceable. *See Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 513 (9th Cir. 2019) (observing that "every circuit to consider the question" has so held); *Williams v. Imhoff*, 203 F.3d 758, 767 (10th Cir. 2000); *Kramer v. Smith Barney*, 80 F.3d 1080, 1084 (5th Cir. 1996); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3rd Cir. 1993); *Bird v. Shearson Lehman/Am. Express, Inc.,* 926 F.2d 116, 122 (2nd Cir. 1991); *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.*, 847 F.2d 475, 479 (8th Cir. 1988).

The Triad Defendants, as the parties seeking to compel arbitration, have the burden of showing that plaintiff was bound by the amendment to the Plan. *See A.D.*, 885 F.3d at 1063. Whether the parties have agreed to arbitrate is a question normally answered by the court; the issue is governed by state-law principles of contract formation. *Wis. Local Gov't Prop. Ins.*

*Fund v. Lexington Ins. Co.*, 840 F.3d 411, 414 (7th Cir. 2016). The Triad Defendants contend that Missouri law applies, because the arbitration amendment to the Plan states that, in rendering an arbitration award, "the arbitrator(s) shall determine the respective rights and obligations of the parties under federal law, or, if federal law is not applicable, the laws of the State of Missouri." (Third Am. to the Triad ESOP at 4.) The Court is not convinced that this provision, which by its terms controls the *arbitrator's* analysis, applies to the entire amendment. But plaintiff agrees to the application of Missouri law for purposes of the instant motion, and the Plan is administered in Missouri, so the Court will apply the substantive law of that state. *See Harter v. Iowa Grain Co.*, 220 F.3d 544, 559 n.13 (7th Cir. 2000) (a court will not perform an independent choice-of-law analysis where the parties agree on the governing law and the choice bears a reasonable relation to their dispute).

The parties agree that, under Missouri law, courts are to apply usual rules of contract law and canons of contract interpretation to decide whether an arbitration agreement exists. *See Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo.), *as modified on denial of reh'g* (June 30, 2006). The essential elements of a valid contract in Missouri are offer, acceptance, and bargained-for consideration. *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 436 (Mo. Ct. App. 2010) (citing *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. 1988)). As to the plaintiff, the Triad Defendants do not argue that any of these traditional elements of a valid contract are present. The Triad Defendants do not assert that plaintiff was given notice of the amendment that contains the arbitration provision and agreed to be bound by that amendment, or that plaintiff otherwise demonstrated an agreement to arbitrate.

Generally, an arbitration agreement generally cannot bind a non-signatory. *A.D.*, 885 F.3d at 1059 (citing *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005)). "[A]rbitration agreements generally are enforceable against non-signatories only in a handful of limited circumstances, depending on the applicable state law." *Id.* These limited exceptions are assumption, agency, estoppel, veil piercing, and incorporation by reference. *Id.* at 1059-60. The Triad Defendants do not argue that any of these exceptions apply under Missouri law. Instead, they contend that even though the arbitration amendment was enacted after the plaintiff left employment with Triad (but while he was still a plan participant), plaintiff agreed to be bound by the amendment by merely participating in the Plan while the provision was in effect. In support of this argument, the Triad Defendants do not cite Missouri law; they cite a single decision, *Dorman*, 780 F. App'x at 513, in which the Ninth Circuit held that an arbitration provision in a retirement-plan document was enforceable against a plaintiff/plan participant who brought ERISA claims on his own behalf and on behalf of the plan, where the plaintiff had participated in the plan while the provision was in effect. The Court declines to apply *Dorman*, which is an unpublished ruling that is not binding on this Court. It is not clear that the *Dorman* court was applying any state's law to the question of whether there was an agreement to arbitrate. Moreover, the Ninth Circuit gave no reasoning for its determination that continued participation in a plan is the equivalent of an agreement to any plan amendments, and it cited only one Ninth Circuit decision, *Chappel v. Laboratory Corp. of America*, 232 F.3d 719 (9th Cir. 2000), which does not explicitly stand for that proposition and likewise contains no reasoning.

In their reply brief, the Triad Defendants maintain that plaintiff "cannot plead ignorance" of the arbitration terms because he agreed to the terms of the Plan when he became a participant

in 2015 and was still participating when the arbitration terms were added, and he could have requested the plan documents that contained the arbitration provision prior to his withdrawal from the Plan, but did not do so. (ECF No. 50, Triad Defs.' Reply at 6.) This argument sidesteps ERISA's notice requirements. In *Orth v. Wisconsin State Employees Union, Council 24*, 546 F.3d 868, 874 (7th Cir. 2008), the Seventh Circuit observed that although welfare plans can be changed without the consent of participants, it is nonetheless a breach of fiduciary duty to change the plan without notice to those affected by the change.

Citing *Dorman*, 780 F. App'x at 513, the Triad Defendants also submit that it is not an individual participant's consent that matters for determining whether there is an agreement to arbitrate ERISA claims, but rather the consent of the Plan. Because it is undisputed that the Plan agreed to arbitration by virtue of adopting the relevant amendment, say defendants, plaintiff must arbitrate his claims. Given that ERISA plans are not typical contracts, this argument might have more force had defendants offered evidence that plaintiff had received notice of the amendment.[1] Under the circumstances presented here, however, and absent Seventh Circuit authority, the Court is unwilling to conclude that the traditional contract analysis that governs the issue of the existence of an arbitration agreement is displaced in the context of ERISA plans. It is difficult to reconcile defendants' approach to the analysis—simply substituting the Plan itself (or the Plan's sponsor) for a plan participant—with the FAA's "overarching principle that arbitration is a matter of contract." *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). This Court agrees with the district court in *Dorman*, which stated: "[T]he Plan Document was executed unilaterally by the plan sponsor . . . . A plan document drafted by fiduciaries—the very people whose actions have been called into question by the lawsuit—should not prevent plan participants and beneficiaries from vindicating their rights in court." *Dorman v. Charles Schwab & Co.*, No. 17-CV-00285-CW, 2018 WL 467357, at *5 (N.D. Cal. Jan. 18, 2018), *rev'd sub nom. Dorman*, 780 F. App'x 510; *see also Brown ex rel. Henny Penny Corp. Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*, No. 3:17-CV-250, 2018 WL 3546186, at *5 (S.D. Ohio July 24, 2018) ("Allowing the fiduciary to unilaterally require plan participants to arbitrate claims for breach of fiduciary duty would, in a sense, be allowing the fox to guard the henhouse.") (internal quotation marks and citation omitted).

In addition to the lack of an enforceable agreement to arbitrate, there is another reason why the Triad Defendants' motion will be denied. Arbitration agreements that act as a "prospective waiver of a party's right to pursue statutory remedies" are unenforceable, on public-policy grounds. *Italian Colors*, 570 U.S. at 235-36. As plaintiff points out, the arbitration provision eliminates his right to pursue plan-wide statutory remedies that are expressly granted under ERISA § 502(a)(2), which authorizes plan participants to bring civil actions for appropriate relief under ERISA § 409. 29 U.S.C. § 1132(a)(2). Section 409, in turn, provides that plan fiduciaries who breach their fiduciary duties are "liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such

[1] The Triad Defendants also give short shrift to the question of whether the act of amending the Plan to add the arbitration provision was truly an act by the Plan. They cite the amendment itself in support of their assertion that the Plan consented, but the amendment merely shows that it was enacted by the Plan sponsor, Triad. Defendants do not discuss whether this is a meaningful distinction.

fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. § 1109(a). Claims under § 502(a)(2) are "brought in a representative capacity on behalf of the plan as a whole," in the interest of "the financial integrity of the plan." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985). The arbitration amendment to the ESOP contains "material and non-severable" terms that purport to restrict plaintiff's remedies for § 502(a)(2) claims to losses to his individual account, a prorated portion of profits, and other individualized equitable relief. These terms do not comport with ERISA's remedial scheme, which goes beyond an individual participant's account and extends to the entire plan, encompassing relief that includes the disgorgement of profits and removal of fiduciaries. The arbitration provision is therefore unenforceable with respect to plaintiff's § 502(a)(2) claims.

Again relying on *Dorman*, the Triad Defendants contend that "Plan-wide relief can still be achieved through individual arbitration" because any participant "who chooses to seek relief on behalf of the Plan for their individual Plan account" under § 502(a)(2) can do so. (Triad Defs.' Reply at 8-9.) In *Dorman*, the Ninth Circuit determined that "arbitration on an individualized basis" is consistent with the Supreme Court's decision in *LaRue v. DeWolff, Boberg & Associates*, 552 U.S. 248 (2008), reasoning that, "[a]lthough § 502(a)(2) claims seek relief on behalf of a plan, the Supreme Court [] recognized" therein "that such claims are inherently individualized when brought in the context of a defined contribution plan," and that *LaRue* "stands for the proposition that a defined contribution plan participant can bring a § 502(a)(2) claim for the plan losses" in his individual account. 780 F. App'x at 514. This Court respectfully disagrees with this interpretation of *LaRue*. While the Supreme Court authorized recovery under § 502(a)(2) for fiduciary breaches that impair the value of plan assets in a participant's individual account, it clearly stated that § 502(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries." 552 U.S. at 256; *see also Peabody v. Davis*, 636 F.3d 368, 373 (7th Cir. 2011) ("The remedy in an action for breach of fiduciary duty [under § 502(a)(2)] is for the fiduciary to 'make good' the loss *to the plan*.") (emphasis added). The Supreme Court did not indicate in *LaRue* that § 502(a)(2) claims are "inherently individualized," nor did it suggest that an individual plan participant's claim can somehow be split from a claim seeking plan-wide relief. The Triad Defendants fail to explain, and the Court does not see, how plan-wide relief could be achieved in individual arbitration under the terms of the ESOP, which, as set out above, limit claimants to "individual relief." (Third Am. to the Triad ESOP at 2.)

## CONCLUSION

The motion of defendants David Caito, Robert Hardie, Michael McCormick, and the Board of Directors of Triad Manufacturing, Inc. to compel arbitration and/or dismiss [29] is denied. The stay of discovery is lifted, and the Court sets the following deadlines. Amendment of pleadings and joinder of parties by 1/14/2021. All fact discovery shall be completed by 3/15/2021. Discovery supervision and all discovery disputes are referred to the magistrate judge without authority to extend the discovery cutoff date. A status hearing is set for 3/16/2021 at 10:30 a.m. to discuss the next steps in the litigation.

**DATE:** August 21, 2020

**Hon. Ronald A. Guzmán**
**United States District Judge**