**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| James Smith and Jerry Honse, on behalf of themselves and all others similarly situated, and on behalf of the Triad Manufacturing, Inc. Employee Stock Ownership Plan, | )<br>)<br>)<br>)<br>) Civil Action No.: 1:20-cv-02350<br>) |
| Plaintiffs, | ) JUDGE RONALD A. GUZMAN<br>) |
| v. | ) MAGISTRATE JUDGE YOUNG B. KIM<br>) |
| GreatBanc Trust Company, the Board of Directors of Triad Manufacturing, Inc., David Caito, Robert Hardie, Michael McCormick, Elizabeth J. McCormick, Elizabeth J. McCormick Second Amended and Restated Revocable Living Trust, Michael K. McCormick Second Amended and Restated Revocable Living Trust, David M. Caito Revocable Trust, and First Amended and Restated Robert Hardie Revocable Trust, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF DOCUMENTS RESPONSIVE TO RFP NO. 7**

I. Introduction

Plaintiffs James Smith and Jerry Honse seek to compel Defendants[1] to produce documents and communications regarding the valuation of Triad Manufacturing, Inc. ("Triad" or the

---

[1] "Defendants" collectively refers to Defendant GreatBanc Trust Company ("GreatBanc"), and the Triad Defendants – which include the Board of Directors of Triad Manufacturing, Inc. ("Board Defendants"), David Caito, Robert Hardie, Michael McCormick, Elizabeth J. McCormick, Elizabeth J. McCormick Second Amended and Restated Revocable Living Trust, Michael K. McCormick Second Amended and Restated Revocable Living Trust, David M. Caito Revocable Trust, and First Amended and Restated Robert Hardie Revocable Trust.

"Company") after the 2015 ESOP Transaction giving rise to this ERISA class action lawsuit. In that 2015 Transaction, 100% of the common stock of Triad was sold to the newly created Triad Employee Stock Ownership Plan ("ESOP") for a total purchase price of $106.2 million. This price was based on a pre-Transaction valuation of the Company which projected tremendous growth in future earnings. Plaintiffs allege that the appraisal was inflated because, among other reasons, Defendants overstated Triad's expected future earnings. *E.g.*, Pls.' First Am. Compl. ¶¶ 85, 90–101 (ECF No. 99). Discovery to date has shown that these earnings, or "EBITDA"[2] projections were wildly optimistic: in 2016, the Company actually achieved EBITDA that was $9.3 million short of projections; in 2017, the Company achieved EBITDA of $15.3 million less; and worst, in 2018, it fell short by $26.9 million. Declaration of Mary J. Bortscheller ¶¶ 3–4, Ex. A (2015 Transaction valuation) at TRIAD-GREATBANC-0000224, Ex. B (2018 valuation statement) at TRIAD-011800.

Post-2015 Transaction information is relevant to the Plaintiffs' claims. Although Plaintiffs' First Amended Complaint ("FAC") makes allegations about pre- and post-2015 Transaction acts and omissions, Defendants are improperly withholding documents and communications regarding post-Transaction events. This Motion seeks to compel production of post-Transaction documents and communications responsive to one Request for Production of Documents served on both the Triad Defendants and GreatBanc, RFP No. 7. This Request seeks information regarding the valuation of the Company in the years between the 2015 Transaction and December 31, 2019. *See* Bortscheller Decl. ¶¶ 5–6, Group Ex. C (Pls.' RFP No. 7 to Triad Defs. and GreatBanc), Group Ex. D (Triad Defs. and GreatBanc's Responses and Objections to RFP No. 7). Documents

---

[2] EBITDA refers to "earnings before interest, taxes, depreciation and amortization."

2

responsive to RFP No. 7 are relevant to Counts I and II of the FAC, which assert claims based on the pre- and post-Transaction conduct of GreatBanc and the Board Defendants.[3]

First, the discovery goes to Plaintiffs' allegations in Count I that GreatBanc breached its fiduciary duty owed to the ESOP *both before and after* the Transaction. FAC ¶¶ 161–62, 166 (alleging GreatBanc failed to act prudently and loyally "in connection with the 2015 Transaction and Clawback."). Documents responsive to RFP No. 7 relate to Count I's allegations that GreatBanc breached its fiduciary duty to the ESOP participants by failing to ensure that post-Transaction decisions—including allocation of shares and debt renegotiation—were in participants' best interest and otherwise in compliance with ERISA. *Id.* ¶¶ 139, 166. Further, the FAC alleges that GreatBanc failed to do adequate due diligence and relied on the overly optimistic earnings projections prior to the Transaction. *Id.* ¶¶ 161–62; *see also* ¶¶ 87–89, 97–98, 100, 104. Post-Transaction valuation documents and related communications are relevant because they will reveal whether Triad's earnings shortfalls were attributable to issues known or knowable at the time of the Transaction. For instance, the FAC alleges that the pre-Transaction valuation assumed that the Company would continue growing at a rapid pace, despite headwinds and risks that made potential third-party buyers reject Triad's growth narrative. *E.g.*, *id.* ¶¶ 91–94. Discovery thus far indicates that Triad's contracts with its key customers gave the customers broad discretion as to how much business to give to Triad. Post-Transaction discussion about why the Company missed its earnings will reveal whether GreatBanc took for granted future orders which were not guaranteed.

---

[3] Defendants have represented that they have produced all pre-Transaction due diligence documents.

Second, documents responsive to RFP No. 7 also directly relate to the Count II allegations that the Board Defendants breached their duty to monitor GreatBanc. *Id.* ¶ 171(g). The FAC alleges that the Board Defendants failed to ensure that GreatBanc took remedial action following the 2015 Transaction when it became apparent the Company's projections were inflated due to reasons that were foreseeable at the time of the Transaction. *Id.*; *see also* ¶ 107 (alleging that the clawback did not remedy the ERISA violations). Moreover, the Board Defendants failed to monitor GreatBanc to ensure that the ESOP participants were treated fairly in the allocation of shares and the renegotiation of the sellers' notes following the clawback. *Id.* ¶¶ 138–39. In particular, Defendants' communications about the post-Transaction debt acceleration and renegotiation are highly relevant to Plaintiffs' claim that Defendants failed to adequately consider whether such actions would negatively impact the Company's solvency and future growth.

Defendants should be compelled to provide the post-Transaction documents requested in RFP No. 7 because they are central to Plaintiffs' claims, and any burden associated with the production of the documents is outweighed by the importance of the discovery.

## II. Legal Standard

Parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *Stone v. Signode Indus. Grp. LLC*, No. 17-CV-05360, 2022 WL 393584, at *2 (N.D. Ill. Feb. 9, 2022) (affirming magistrate's grant of motion to compel production of documents withheld as irrelevant). "In determining the scope of discovery under Rule 26, relevance is construed broadly and is not limited to issues raised by the pleadings." *Wachala v. Astellas US LLC*, No. 20 CV 3882, 2021 WL 5014157, at *2 (N.D. Ill. June 14, 2021) (internal citation omitted) (granting motion to compel production of documents withheld on relevance grounds). The proportionality of a discovery request considers "the importance of the issues at stake in the action, the amount in controversy,

4

the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*, quoting Fed. R. Civ. P. 26(b)(1).

### III.    Relevant Background

Triad Manufacturing, Inc. ("Triad" or the "Company") designs and manufactures custom fixtures, like shelving, for bricks-and-mortar retail stores. FAC ¶¶ 42, 101. The Co-Presidents of Triad – Defendants David Caito, Robert Hardie, and Michael McCormick (collectively, the "Board Defendants") – attempted to sell the Company in early 2015. *Id.* ¶ 5. Despite a concerted marketing effort, the Board Defendants did not find a third-party buyer willing to pay the price the sellers wanted. *Id.*; *see also* ¶¶ 76–80. Instead, the Board Defendants created an ESOP overseen by a Trustee – Defendant GreatBanc – that they appointed. *Id.* ¶¶ 7, 81. GreatBanc then approved the ESOP's purchase of 100% of the shares of Triad's common stock, at $58.08 per share, for a total price of $106.2 million. *Id.* ¶¶ 4, 56, 178. The ESOP purchased this Company stock from the Board Defendants and revocable trusts for which they or their spouses are beneficiaries. *Id.* ¶ 4. The purchase price was based on a flawed valuation analysis which relied on overly optimistic financial projections supplied by Triad's management. *Id.* ¶¶ 85–105.

The FAC alleges, in pertinent part, that GreatBanc breached its fiduciary duty as Trustee when it failed to perform adequate due diligence to ensure that the stock appraisal was based on reliable earnings projections. Among other things, GreatBanc "failed to take into account Triad's highly concentrated and volatile customer base due to the widespread closure of retail stores." FAC ¶ 13; *see also* ¶ 94 (alleging that Triad's bricks-and-mortar retail-based customers were shrinking in 2015 due to the rise in online shopping); ¶¶ 161–62.

5

The FAC also alleges that the Board Defendants were each a fiduciary with respect to the ESOP, with the authority to appoint and remove GreatBanc as the ESOP Trustee. ¶ 25. As a result, the Board Defendants at all relevant times had a duty to monitor GreatBanc to ensure it fulfilled its fiduciary obligations to the ESOP and did not engage in transactions prohibited under ERISA. *Id*. ¶¶ 25, 169 (citing 29 C.F.R. § 2509.75-8 (FR-17)). The Board Defendants allegedly breached that duty to monitor by failing to ensure that GreatBanc took remedial action after the 2015 Transaction, when it became clear that the ESOP had paid more than fair market value for Triad stock. *Id*. ¶¶ 107, 171(h).

Plaintiffs' RFP No. 7 seeks:

"All Documents constituting or Relating to the appraisal* or valuation** report of Triad and/or Triad Stock, during the Relevant Time Period, including but not limited to any draft or final versions of appraisals, valuation reports, analyses, financial models, memoranda, spreadsheets, letters, exhibits, appendices, notes, or work papers."

*The term "appraisal" has the same meaning as "appraisal" used in the first sentence of GreatBanc's Answer at ¶ 43 (ECF No. 45).
**The term "valuation report" has the same meaning as "valuation report" used in the first sentence of GreatBanc's Answer at ¶ 8 (ECF No. 45).

Bortscheller Decl. ¶ 5, Group Ex. C (Pls.' RFP No. 7). While Defendants have produced certain documents responsive to this Request, Defendants continue to withhold any notes, communications, or other documents regarding the post-Transaction annual valuation reports and the related due diligence, on the basis that such discovery is not relevant. *Id*. ¶ 6, Group Ex. D (Triad Defs. and GreatBanc responses to RFP No. 7). Notably, Plaintiffs have also served a document subpoena seeking similar discovery from third-party Stout Risius Ross, LLC ("Stout"). GreatBanc hired Stout to calculate the Company valuation – pre- and post-Transaction. From the outset, Stout has indicated that it would produce documents in "coordination with" Defendants. *Id*. ¶ 7, Ex. E (Stout Objections to Subpoena). Relevant to this Motion, Stout has asserted

6

Defendants' objection as to the appropriate time frame, stating that Plaintiffs' request for post-Transaction documents "is unreasonable in view of the date of the challenged transaction." *Id*. at 3.

## IV. Compliance With Local Rule 37.2

N.D. Illinois Local Rule 37.2 requires that the moving party in a discovery motion engage with opposing counsel to attempt to resolve differences. Plaintiffs and Defendants have had a disagreement regarding the scope of relevant discovery in the case since the commencement of discovery. *See, e.g*. Joint Status Report Regarding Written Discovery Issues at 3–5 (ECF No. 91). The parties engaged in numerous telephonic meet and confers, starting in December 2021, repeatedly trying in good faith to resolve the instant discovery dispute. Bortscheller Decl. ¶ 8. The most recent meet and confer teleconferences occurred on March 8, 10 and 16 of 2022. *Id*. ¶ 9. The March 8 conference involved counsel for all Parties, including Matthew Grabell for Triad Defendants and Mark Nebrig and Kristen Kenley for Defendant GreatBanc. *Id*. The March 10 conference involved Mr. Grabell for Triad, and Mary Bortscheller, Daniel Feinberg and Daniel Sutter for Plaintiffs. *Id*. The March 16 conference included Mr. Grabell and Benjamin Fryer for Triad, Mr. Nebrig and Ms. Kenley for GreatBanc, and Ms. Bortscheller, Mr. Feinberg and Mr. Sutter for Plaintiffs. *Id*. During these conferences, the parties narrowed the issues in dispute considerably, but ultimately reached impasse regarding the production of post-Transaction documents and communications responsive to RFP No. 7. *Id*. ¶ 10.

## V. Argument

Defendants should be compelled to produce documents and communications related to the post-Transaction valuations of the Company following the 2015 Transaction until December 31, 2019. Such discovery is relevant to determining whether (1) Triad Defendants inflated the Company's projected earnings, (2) GreatBanc failed to conduct adequate due diligence and (3) the

reasons for the Company's post-Transaction earnings shortfalls were known or knowable at the time of the Transaction, as alleged in the FAC. Moreover, the FAC contains numerous factual allegations that implicate the post-Transaction valuations, including allegations regarding the clawback of part of the Transaction price(triggered in 2018), changes to the terms of the selling shareholders' subordinated notes, and Defendants' failure to take remedial action. FAC ¶¶ 135–39, 166, 171(g) How the post-Transaction valuations were performed; when the Defendants became aware of the information in the reports regarding the Company's inaccurate financial projections; what, if anything, GreatBanc and the Board Defendants did with the information; and whether post-Transaction changes to the terms of the selling shareholders' notes were fair to the ESOP – the discovery sought is relevant to answering these questions and is plainly relevant to Plaintiffs' claims. Defendants cannot credibly claim this discovery is *not* relevant and they lack a compelling argument that the discovery not proportional to the needs of this case. The balancing of interests contemplated by Rule 26(b) favors Plaintiffs. Accordingly, this Motion should be granted.

  A. <u>Discovery of Post-Transaction Valuations and Related Communications is Relevant to Plaintiffs' Breach of Fiduciary Duty Claims Against GreatBanc</u>

GreatBanc had a fiduciary duty to ensure the ESOP did not pay more than fair market value for the Triad stock purchased in the 2015 Transaction. Plaintiffs allege that GreatBanc breached this duty by, among other things, failing to adequately investigate the management earning projections underlying Stout's Transaction valuation analysis to confirm that such projections were accurate and reliable. Defendants are withholding post-2015 valuation documents and communications on the assertion that they are irrelevant because they came after the initial ESOP Transaction. However, as outlined above, Plaintiffs' claims involve post-Transaction conduct and events, and the requested discovery will reveal whether Defendants are liable for approving a

8

Transaction based on inflated assumptions about future growth and whether post-Transaction changes to the terms of the sellers' notes were fair to the ESOP.

Defendants' narrow view on relevance is also not supported by case law. Other courts have rejected Defendants' arguments in the identical context of a challenged ESOP transaction. *See, e.g.*, *Woznicki v. Raydon Corp.*, No. 618CV2090ORL78GJK, 2020 WL 2562874, at *3 (M.D. Fla. May 19, 2020); *Perez v. First Bankers Tr. Servs., Inc.*, No. CV124450MASDEA, 2017 WL 1232527, at *19, *61–65 (D.N.J. Mar. 31, 2017). In *Woznicki*, plaintiff sought production of certain documents which were created after the ESOP transaction, and defendants withheld them, objecting that the documents were "irrelevant and not proportional because whether [the ESOP trustee] is liable depends on the circumstances then prevailing, not the 'results of the transaction.'" *Id*. The court rejected this argument, finding that "[s]imply because the circumstances then prevailing are when [the trustee's] behavior will be measured, does not necessarily lead to the conclusion that documents created after the 2015 Transaction are not relevant or proportional." *Id*. (granting motion to compel); *see also Donovan v. Cunningham*, 716 F.2d 1455, 1472 (5th Cir. 1983) (considering post-transaction communications as relevant to an ESOP trustee's actions before the transaction).

Similarly, in *Perez*, the court's post-trial findings of fact specifically cited the "Industry Analysis section" from a "Post-Transaction Valuation Report." *Perez*, 2017 WL 1232527, at *19, *32, *61–62. Notably, the court found that "a prudent investor would have considered [the Industry Analysis] to be material *prior to* the Transaction for determining whether the tenor of the industry analysis for [the company purchased by the ESOP] reasonably reflected [the company's] projected performance." *Id*. at *19 (emphasis added). Further, the court found that the Post-Transaction Valuation contained information that "was known or reasonably knowable as of the date of the

9

Transaction." *Id.* at *61. The same reasoning applies here – Plaintiffs allege that the Transaction valuation failed to adequately consider a secular trend from brick-and-mortar stores to online retail sales and this shift in the retail market was an important reason why Triad fell far short of its projected sales and earnings.[4]

Further, discovery to date supports the relevance of Plaintiffs' request in RFP No. 7. Defendants have produced the post-Transaction valuation reports suggesting that the problems with the 2015 valuation could have been discovered with adequate due diligence. For example, the 2016 valuation report explains that the Company had a "decline in net sales and adjusted earnings in fiscal 2016" that was "attributable to lower sales from the Company's key customers, including Samsung, Under Armour and Best Buy." Bortscheller Decl. ¶ 11, Ex. F (2016 valuation statement) at TRIADP-02352. It further reported that "sales to Under Armour were below expectations in 2016 primary [*sic*] due to excess fixture inventory held by Under Armour that was previously unidentified as well as the *negative impact of the closure of Sports Authority retail locations*." *Id*. at TRIADP-023258 (emphasis added). The documents and communications related to the valuation reports from 2016, 2017 and 2018 will shed light on whether GreatBanc could have known, through a reasonable investigation, that the headwinds described above were likely to depress Triad's future earnings, as alleged in the FAC. *See, e.g.*, FAC ¶¶ 94–98. As it stands, the record remains incomplete on that inquiry. The production of these documents should be compelled.

---

[4] Notably, the word "Amazon" does not appear in the 2015 Transaction valuation report. *See generally* Bortscheller Decl. Ex. A.

B. <u>Discovery Sought is Relevant to Plaintiffs' Duty to Monitor Claim Against the Triad Defendants</u>

Similarly, documents and communications concerning post-Transaction valuations will help reveal what, if anything, the Board Defendants did after the Transaction to ensure that their appointed fiduciary, GreatBanc, adequately fulfilled its fiduciary function. Such discovery is central to Plaintiffs' breach of the duty to monitor claim in Count II. "Individuals who appoint ERISA fiduciaries have a duty to monitor those fiduciaries' actions and to provide them with the information necessary to carry out their responsibilities." *Bartnett v. Abbott Lab'ys*, No. 20-CV-02127, 2021 WL 428820, at *5 (N.D. Ill. Feb. 8, 2021) (quoting *Brieger v. Tellabs, Inc.*, 629 F. Supp. 2d 848, 867 (N.D. Ill. 2009)). According to the Department of Labor, ERISA requires that a fiduciary who has appointed a trustee (or other fiduciary) must monitor the performance of the appointee in order "to ensure that their performance has been in compliance with the terms of the plan and statutory standards...." 29 C.F.R. § 2509.75–8 at FR–17 (Department of Labor questions and answers).

The requested documents and communications regarding the post-Transaction valuations will show whether the Board Defendants monitored in any way GreatBanc's handling of the ESOP's overpayment in the 2015 Transaction, including the impact of the clawback on ESOP participants and the fairness of the renegotiated sellers' note terms. Such discovery is central to Plaintiffs' breach of the duty to monitor claim in Count II. FAC ¶ 171(g); *see also* ¶¶ 107, 138–39. For example, Triad has extensive communications with Stout and GreatBanc each year in connection with the annual valuation reports. Plaintiffs are entitled to find out if these communications include disclosures of adverse developments that were known or knowable as of the ESOP Transaction date and whether Defendants considered any corrective actions beyond the clawback. Given the high degree of importance of such discovery, and Plaintiffs' inability to obtain

11

this information from any other source, the requests at issue are also proportional to the needs of the case. Fed. R. Civ. P. 26(b).

    C. <u>Defendants' Objections Provide Cover to Third-Party Stout to Not Produce Documents</u>

Finally, Defendants' objections to RFP No. 7 are thwarting Plaintiffs' efforts to obtain discovery into this subject from any source. As noted above, Plaintiffs also have sought production of the post-Transaction valuation and associated due diligence documents from Stout, a non-party, which performed the valuation analyses. Stout has cited Defendants' objections and refused to produce the requested documents. To date, Plaintiffs have not received any post-Transaction valuation due diligence documents from Stout. An order compelling Defendants to produce documents and communications regarding the Company's post-Transaction valuations would also support Plaintiffs' efforts to obtain Stout's internal valuation due diligence notes and communications.

## VI. Conclusion

For the reasons articulated above, Plaintiffs respectfully request that the Court order Defendants to respond to RFP No. 7 and produce all documents and communications regarding the valuation reports created by Stout between the 2015 Transaction and December 31, 2019.

Dated: March 22, 2022                          Respectfully submitted,

                                                           <u>/s/ *Mary J. Bortscheller*</u>
COHEN MILSTEIN SELLERS & TOLL PLLC
Michelle C. Yau (admitted *pro hac vice*)
Mary J. Bortscheller, Illinois Bar: 6304457
Daniel R. Sutter (admitted *pro hac vice*)
Laura E. Older (admitted *pro hac vice*)
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005 (202) 408-4600
myau@cohenmilstein.com
mbortscheller@cohenmilstein.com
dsutter@cohenmilstein.com
lolder@cohenmilstein.com

Carol V. Gilden, Illinois Bar: 6185530
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Tel: (312) 357-0370
Fax: (312) 357-0369
cgilden@cohenmilstein.com

FEINBERG, JACKSON, WORTHMAN & WASOW, LLP
Nina Wasow (admitted *pro hac vice*)
Dan Feinberg (admitted *pro hac vice*)
2030 Addison Street ● Suite 500
Berkeley, CA 94704
Tel: (510) 269-7998
Fax: (510) 269-7994
nina@feinbergjackson.com
dan@feinbergjackson.com

*Attorneys for Plaintiffs*

13