## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| James Smith and Jerry Honse, on behalf of themselves and all others similarly situated, and on behalf of the Triad Manufacturing, Inc. Employee Stock Ownership Plan, | ) ) ) ) ) | Civil Action No.: 1:20-cv-02350-FUV |
| | ) | |
| Plaintiffs, | ) ) | JUDGE FRANKLIN U. VALDERRAMA |
| v. | ) ) | MAGISTRATE JUDGE YOUNG B. KIM |
| | ) | |
| GreatBanc Trust Company, the Board of Directors of Triad Manufacturing, Inc., David Caito, Robert Hardie, Michael McCormick, Elizabeth J. McCormick, Elizabeth J. McCormick Second Amended and Restated Revocable Living Trust, Michael K. McCormick Second Amended and Restated Revocable Living Trust, David M. Caito Revocable Trust, and First Amended and Restated Robert Hardie Revocable Trust, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' UNOPPOSED MOTION AND INCORPORATED MEMORANDUM OF LAW FOR FINAL APPROVAL OF SETTLEMENT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND .......................................................... 2

    I.      Nature of the Claims ............................................................................................ 2

    II.     Pleadings and Motions Practice ......................................................................... 2

    III.    Discovery ............................................................................................................. 3

    IV.   Mediation and Settlement Negotiations ............................................................. 4

SUMMARY OF THE PROPOSED SETTLEMENT TERMS ................................................. 4

    I.      Benefits to the Class ............................................................................................ 4

    II.     Notice and Administration .................................................................................. 5

    III.    Release of Claims ................................................................................................ 6

    IV.   Independent Fiduciary Report ............................................................................. 7

ARGUMENT ...................................................................................................................... 8

    I.      The Class Is Appropriately Certified for Settlement Purposes ............................ 8

    II.     The Court Should Grant Final Approval of the Settlement ................................. 8

         A.    Legal Standard ............................................................................................ 8

         B.    The Settlement Is Fair and Reasonable Under the Rule 23(e)
               Factors ........................................................................................................ 9

              1.     The Class Representatives and Their Counsel Have
                     Adequately Represented the Class ................................................... 9

              2.     The Settlement Is the Product of Arm's Length
                     Negotiations by Well-Informed and Experienced Counsel .......... 10

              3.     The Relief Provided to the Class Is Adequate ............................. 11

              4.     The Proposal Treats Class Members Equitably to Each
                     Other .............................................................................................. 14

         C.    The Settlement Is Fair and Reasonable Under the Seventh Circuit's
               Factors ...................................................................................................... 14

              1.     The Strength of Plaintiffs' Claims, Balanced Against the
                     Settlement Offer, and the Complexity, Length, and Expense
                     of Further Litigation ..................................................................... 14

              2.     The Amount of Opposition and the Reaction of the Class
                       Members to the Settlement ........................................................... 15

       3.    The Opinion of Competent Counsel ............................................. 15

       4.    The Stage of the Proceedings and the Amount of Discovery
            Completed ...................................................................................... 15

CONCLUSION............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahrendsen v. Prudent Fiduciary Servs., LLC*,
2023 WL 4139151 (E.D. Pa. June 22, 2023) ..................................................11, 12

*Allen v. GreatBanc Tr. Co.*,
No. 1:15-cv-03053, ECF 108 (N.D. Ill. May 6, 2019) ...........................................11

*Beesley v. Int'l Paper Co.*,
2014 WL 375432 (S.D. Ill. Jan. 31, 2014)..............................................................14

*Boyd v. Coventry Health Care Inc.*,
299 F.R.D. 451 (D. Md. 2014) .................................................................................12

*Burnett v. Prudent Fiduciary Servs. LLC*,
2023 WL 387586 (D. Del. Jan. 25, 2023), *report and recommendation
adopted sub nom. Burnett v. Prudent Fiduciary Serv.*, 2023 WL 2401707 (D.
Del. Mar. 8, 2023), *appeal filed* No. 23-1527 (3d Cir. Apr. 3, 2023).........................2

*Chesemore v. All. Holdings, Inc.*,
2014 WL 4415919 (W.D. Wis. Sept. 5, 2014) ........................................................14

*Chesemore v. Fenkell*,
829 F.3d 803 (7th Cir. 2016) ...................................................................................14

*Gastreaux v. Pierce*,
690 F.2d 616 (7th Cir. 1982) ...................................................................................15

*Godfrey v. Greatbanc Tr. Co.*,
No. 1:18-cv-07918, ECF 324 (N.D. Ill. Oct. 4, 2022) ............................................14

*Hale v. State Farm Mut. Auto Ins. Co.*,
2018 WL 6606079 (S.D. Ill. Dec. 16, 2018)...........................................................10

*Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*,
59 F.4th 1090 (10th Cir. 2023) ..................................................................................2

*Henry v. Wilmington Tr. NA*,
--- F.4th ----, 2023 WL 4281813 (3d Cir. June 30, 2023)..........................................2

*Kaplan v. Houlihan Smith & Co.*,
2014 WL 2808801 (N.D. Ill. June 20, 2014) .......................................................... 14

*Kaufman v. Am. Express Travel Related Servs. Co.*,
877 F.3d 276 (7th Cir. 2017) .....................................................................................8

iv

*Lloyd v. Argent Tr. Co.*,
  2022 WL 17542071 (S.D.N.Y. Dec. 6, 2022), *appeal filed* No. 22-3116 (2d
  Cir. Dec. 9, 2022)......................................................................................................3, 4, 5

*Nistra v. Reliance Tr. Co.*,
  No. 16-04773, ECF 290 (N.D. Ill. June 19, 2020).................................................11

*Pfeifer v. Wawa, Inc.*,
  2018 WL 4203880 (E.D. Pa. Aug. 31, 2018) ........................................................12

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) .........................................................5, 13, 15

*Smith v. Bd. of Dirs. of Triad Mfg., Inc.*,
  13 F.4th 613 (7th Cir. 2021) .....................................................................................2

*Spano v. Boeing Co.*,
  2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) .........................................................14

*T.K. Through Leshore v. Bytedance Tech. Co.*,
  2022 WL 888943 (N.D. Ill. Mar. 25, 2022), *appeal dismissed*, 2022 WL
  19575674 (7th Cir. Aug. 22, 2022).........................................................................15

*In re TikTok, Inc., Consumer Priv. Litig.*,
  617 F. Supp. 3d 904 (N.D. Ill. 2022) ......................................................................15

*Wong v. Accretive Health, Inc.*,
  773 F.3d 859 (7th Cir. 2014) ....................................................................................9

**Statutes**

ERISA .........................................................................................................2, 7, 12, 14

**Other Authorities**

Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75,632 (Dec. 31, 2003),
  *as amended*, 75 Fed. Reg. 33,830 (June 15, 2010) ..................................................7

Federal Judicial Center, Judges' Class Action Notice and Claims Process
  Checklist and Plain Language Guide (Jan. 1, 2010),
  https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf ....................................6

Federal Rule of Civil Procedure 23 ............................................................... *passim*

Fiduciary Counselors, Litigation Settlements Brochure (2023),
  https://www.fiduciarycounselors.com /assets/FCI-Litigation-Settlements-
  Brochure.pdf (last accessed July 12, 2023) .............................................................7

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs, individually and as Class Representatives, hereby move for an order approving the Class Action Settlement Agreement which, if approved, would resolve all claims against Defendants.[1] Counsel for all Defendants have indicated that no Defendant opposes this motion.

## INTRODUCTION

This Settlement (if approved) provides substantial economic value for the Class, totaling approximately $14.8 million. The Settlement includes cash payments and other valuable consideration from Defendants that will directly increase the value of Class Members' retirement accounts. Class Counsel, who have litigated many similar cases, leveraged their expertise to achieve the substantial Settlement value. Further, the Settlement was reached after the completion of fact discovery (including the deposition of 12 witnesses) and three years of hard-fought litigation, including an interlocutory appeal affirming an important win the Class obtained in this Court. The Settlement was reached after four months of intensive negotiations mediated by a JAMS neutral. Importantly, the $14.8 million in value provided by this Settlement is at the high-end of settlements reached in similar cases and will significantly boost the value of Class Members' current retirement accounts.

For these reasons and those set forth below, the Settlement satisfies all criteria for final approval and provides a meaningful recovery now, thereby avoiding the risks of continued litigation and trial. If the Class proceeds to trial, there is a substantial risk of obtaining less than the Settlement provides or even no recovery at all. To date, no Class Members have objected to

---

[1] The Class Action Settlement Agreement ("Settlement Agreement" or "SA") was filed as ECF 145-2. All capitalized terms used herein have the same meaning as in the Settlement Agreement.

the proposed Settlement. Plaintiffs respectfully request entry of the Proposed Unopposed Motion for Final Approval of Settlement.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Nature of the Claims

Plaintiffs incorporate by reference the "Nature of the Claims" as described in their Motion for Preliminary Approval of Settlement and Certification of Settlement Class. ECF 145 at 2–3.

### II. Pleadings and Motions Practice

Plaintiff James Smith filed the original Complaint on April 15, 2020. ECF 1. On June 1, 2020, the Board Defendants filed a motion to compel arbitration or, in the alternative, dismiss the Complaint, and on August 21, 2020, the Court denied this motion. ECFs 29, 51. On June 29, 2020, GreatBanc answered the Complaint. ECF 45.

On September 3, 2020, the Triad Defendants (all Defendants except for GreatBanc) filed a notice of appeal and a motion to stay the litigation pending appeal, and on September 21, 2020, the Court granted this motion over Plaintiffs' opposition. ECFs 55–56, 61–62. After full briefing, including several amicus briefs on behalf of both sides, and oral argument, the Seventh Circuit affirmed the district court's decision. *Smith v. Bd. of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613 (7th Cir. 2021). The Court reasoned that the Plan's arbitration provision prohibited certain plan-wide remedies available under ERISA and thus constituted an impermissible prospective waiver of a party's right to pursue statutory remedies. *Id.* at 621. District and circuit courts have relied upon this decision's analysis, making it a landmark arbitration decision. *See, e.g.*, *Henry v. Wilmington Tr. NA*, --- F.4th ----, 2023 WL 4281813 (3d Cir. June 30, 2023); *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*, 59 F.4th 1090 (10th Cir. 2023); *Burnett v. Prudent Fiduciary Servs. LLC*, 2023 WL 387586 (D. Del. Jan. 25, 2023), *report and recommendation adopted sub nom.*

2

*Burnett v. Prudent Fiduciary Serv.*, 2023 WL 2401707 (D. Del. Mar. 8, 2023), *appeal filed* No. 23-1527 (3d Cir. Apr. 3, 2023); *Lloyd v. Argent Tr. Co.*, 2022 WL 17542071 (S.D.N.Y. Dec. 6, 2022), *appeal filed* No. 22-3116 (2d Cir. Dec. 9, 2022). On October 12, 2021, the Triad Defendants answered the Complaint. ECF 78.

On February 17, 2022, Plaintiffs filed the First Amended Complaint, which named Plaintiff Honse as an additional Named Plaintiff. ECF 99.

## III. Discovery

The Parties conducted significant discovery before reaching the proposed Settlement. Specifically, Plaintiffs propounded 79 requests for the production of documents on Defendants, served 13 document third party subpoenas, and took 10 fact depositions. ECF 145-4 ¶ 18; ECF 145-1 ¶ 15. Plaintiffs also responded to written discovery requests, produced documents, and testified at depositions. ECF 145-4 ¶¶ 18–19; ECF 145-1 ¶¶ 15–16. In total, Plaintiffs received and reviewed 32,476 documents spanning nearly 250,000 pages and over 14 hours of audio recordings. ECF 145-4 ¶ 18; ECF 145-1 ¶ 15. Plaintiffs worked with a valuation expert to analyze potential damages (i.e., the ESOP's overpayment of Triad shares), which was estimated between $3-35 million. ECF 145-1 ¶¶ 24–25.

Class Counsel engaged in numerous meet-and-confer conferences with Defendants and third parties to resolve discovery disputes without motions practice. ECF 145-1 ¶ 17. However, Plaintiffs successfully moved to compel post-ESOP Transaction documents over Defendants' objections. ECF 113–15. Fact discovery closed on September 30, 2022, and on January 17, 2023, Plaintiffs moved for class certification. ECF 128. Subsequently, the Parties agreed to the primary Settlement terms, and the Court stayed Plaintiffs' class certification motion. ECFs 134–36.

## IV.    Mediation and Settlement Negotiations

The Parties first engaged in mediation in the fall of 2020 through the Seventh Circuit's mandatory mediation program, which was unsuccessful. ECF 145-4 ¶ 16. After fact discovery was completed, the Parties engaged in a full day mediation with JAMS mediator Michael Young on December 8, 2022. ECF 145-1 ¶ 20. The Parties were unable to resolve the case that day. *Id*. From December 9, 2022 until February 8, 2023, the Parties continued to exchange settlement offers with the assistance of Mr. Young. *Id*. ¶ 21. The Parties then continued negotiating until April 11, 2023, when they executed a term sheet. *Id*. On April 19, 2023, the Parties executed the Settlement Agreement. ECF 145-2. On April 20, 2023, Plaintiffs filed their preliminary settlement approval motion, ECF 145, which the Court granted on June 7, 2023, ECF 155.

## SUMMARY OF THE PROPOSED SETTLEMENT TERMS

## I.    Benefits to the Class

The Settlement provides approximately $14.8 million of economic value to the ESOP by increasing the value of the ESOP's Triad stock, which thereby increases the value of Settlement Class Members' individual accounts in the ESOP because Triad stock is the ESOP's only investment. *See* ECF 145-1 ¶ 34. The Settlement provides this economic value through five different components. *First*, the Selling Shareholders will forfeit $15 million of interest (debt) that Triad owes them from the ESOP Transaction. SA § III.5. Without this Settlement term, Triad will be obligated to pay the Selling Shareholders this $15 million. Eliminating this debt increases the value of the Triad stock in Class Members' retirement accounts by $9,735,600, based on a valuation analysis performed by the Trustee's valuation advisor. ECF 145-1 ¶ 35.

*Second*, the Selling Shareholders will forfeit 150,000 Warrants they received as part of the Transaction, and no new warrants will be issued within two years months of final approval of the

Settlement. SA § III.6. Eliminating 150,000 in Warrants increases Triad's stock value by $2,340,000 based on a valuation analysis by the Trustee's valuation advisor. ECF 145-1 ¶ 36.

*Third*, because some Class Members terminated employment and sold their Triad shares during the Class Period, Defendants will pay Class Members $8.20 per share cashed out during the Class Period. SA § III.8. In total, Defendants will pay $263,769, which is more than double what they previously received for their ESOP stock. ECF 145-1 ¶ 37.

*Fourth*, the Settlement requires that the strike price on the Selling Shareholders' existing Warrants increase from $2.00 to $9.45. SA § III.7. This ensures that the Selling Shareholders do not benefit from the increase in Triad's stock price provided by the Settlement terms above.

*Finally*, Defendants will deposit $2,500,000 into an escrow account for the payment of any court-awarded attorneys' fees and expense reimbursement, settlement administration expenses, and service awards. *Id.* § III.1. Should the Court now award any of these funds, they will be paid to the Class rather than revert to Defendants. *Id.* § VI.6. In the event that this Court declines to award these amounts, the Settlement will not be void. *Id.* § VI.5.

## II.    Notice and Administration

The Court-approved Class Notice was distributed to the Class by the Settlement Administrator, Analytics Consulting, LLC ("Analytics") on June 21, 2023. Declaration of Jeff Mitchell ("Mitchell Decl.") ¶ 8. For any Notices returned with a forwarding address, Analytics processed a re-mail of the Notice to the updated address. *Id.* ¶ 9. For any Notices returned as undeliverable, Analytics used a skip trace to ascertain the Class Member's current mailing address, and where possible, Analytics re-mailed the Notice to the current mailing address. *Id.* ¶ 10. To date, the Class Noticed reached 465 of the 468 Class Members. *Id.* ¶ 11. Thus, the Class Notice was successfully transmitted to over 99% of Class Members, *id.*, which is above the targeted 70%

to 95% "reach" for class notices. *See* Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (Jan. 1, 2010), https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

The Class Notice, attached to the Mitchell Declaration as Exhibit A, is clear and straightforward, providing Class Members with key information about Class Members' rights and how to object to the Settlement or the requested attorneys' fees and expense reimbursement, settlement administration expenses, or service awards; the deadline to object to the same; the date of the Fairness Hearing; and the terms of the Settlement Agreement. On June 21, 2023, the Settlement Administrator published the settlement website: www.TriadESOPSettlement.com. Mitchell Decl. ¶ 12. The website explains the Settlement, important dates, and links to key documents, including the Class Notice and all Court filings related to the Settlement. *Id.*

To date, no objections have been received. *Id.* ¶ 15. Analytics has documented a total of 46 unique visitors to the website as of July 14, 2023. *Id.* ¶ 12. The Class Notice also provided Class Members with a toll-free number, staffed by live agents, if Class Members have additional questions. *Id.* ¶ 13. As of July 14, 2023, the call center has received 21 calls and 5 emails related to the Settlement, and Class Counsel has received one inquiry concerning the settlement. Mitchell Decl. ¶¶ 13-14; Declaration of Michelle C. Yau ("Yau Decl.") ¶¶ 42-43; Declaration of Daniel Feinberg ("Feinberg Decl.") ¶ 3. To date, no Class Member has articulated any concerns to Class Counsel with any aspect of the Settlement. Yau Decl. ¶ 43; Feinberg Decl. ¶ 3.

## III. Release of Claims

In exchange for the value received from the Settlement Agreement and satisfaction of the conditions required by the Settlement Agreement, Plaintiffs and the Class will release all claims they currently have or may have relating to or arising out of the Litigation, the Complaint, or based

upon the same factual predicate alleged in the Complaint. SA § XI. However, Plaintiffs and the Class do not release any claims related to enforcement of the Settlement Agreement or any individual claims for benefits pursuant to the ESOP Plan documents. *Id.*

## IV. Independent Fiduciary Report

The Settlement is subject to a written determination by an Independent Fiduciary. SA § IX.2. On July 24, 2023, the Independent Fiduciary will issue its written determination regarding, *inter alia*, the terms of the Settlement Agreement, the scope of the releases, and the amount of attorneys' fees and expense reimbursement, and service awards being requested. Yau Decl. ¶ 32; Feinberg Decl. ¶ 4. This process for review by an Independent Fiduciary is set forth in a Department of Labor regulation, Prohibited Transaction Exemption 2003-39 (the "PTE 2003-39") which applies to "Class Exemption for the Release of Claims and Extensions of Credit in Connection with Litigation." 68 Fed. Reg. 75,632 (Dec. 31, 2003), *as amended*, 75 Fed. Reg. 33,830 (June 15, 2010).

To meet the requirements of this Department of Labor regulation and to satisfy Section IX.2 of the Settlement Agreement, the Independent Fiduciary must review and consider whether to approve the Settlement, including (i) the scope of the release of claims, (ii) the Settlement recovery and the amount of any attorneys' fee award or any other sums to be paid from such recovery, (iii) the Plan of Allocation, (iv) whether the Settlement terms are reasonable, and (v) whether the Settlement complied with all relevant requirements set forth in PTE 2003-39. *Id*. at 33,836-837. The parties have engaged Fiduciary Counselors, Inc. ("FCI") to review the Settlement provisions and provide a report. FCI has served as an independent fiduciary under ERISA dozens of times and has provided independent advice to a variety of stakeholders, including federal government agencies such as the Pension Benefit Guaranty Corporation. *See* Fiduciary

Counselors, Litigation Settlements Brochure (2023), https://www.fiduciarycounselors.com /assets/FCI-Litigation-Settlements-Brochure.pdf (last accessed July 12, 2023).

The Independent Fiduciary's Report will be posted to the Settlement website for Class Members to review. Yau Decl. ¶ 33; Feinberg Decl. ¶ 4. Class Counsel will also submit a final brief to the Court by August 11, 2023 that attaches the Independent Fiduciary Report and addresses any objections to the Settlement. Yau Decl. ¶ 34; Feinberg Decl. ¶ 4.

## ARGUMENT

### I. The Class Is Appropriately Certified for Settlement Purposes

Class certification is appropriate for the same reasons set forth in Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement and Certification of Settlement Class. ECF 145 at 9–13. Because all of the requirements are met and no party opposes certification, the Court should certify the Class for settlement purposes pursuant to Rule 23(e). *Id*.

### II. The Court Should Grant Final Approval of the Settlement

#### A. Legal Standard

Rule 23(e) provides that a class action must be approved by a court as fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *Kaufman v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276, 283 (7th Cir. 2017). The 2018 Amendments to Rule 23(e) provide direction to courts considering whether to approve class action settlements, including whether:

(A)   the class representatives and counsel have adequately represented the class;
(B)   the proposal was negotiated at arm's length;
(C)   the relief provided for the class is adequate, taking into account:
    (i)   the costs, risks, and delay of trial and appeal;
    (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv)   any agreement required to be identified under Rule 23(e)(3); and
(D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *id.* 2018 amends.

The Seventh Circuit also considers several factors when evaluating a class settlement: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) [the] stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863–64 (7th Cir. 2014) (citations omitted).

**B.      The Settlement Is Fair and Reasonable Under the Rule 23(e) Factors**

  **1.      *The Class Representatives and Their Counsel Have Adequately Represented the Class***

Rule 23(e)(2)(A) requires adequate representation by the Class Representatives and their counsel, which is also addressed in the concurrently filed Unopposed Motion for Attorneys' Fees and Expense Reimbursement, Settlement Administration Expenses, and Service Awards. Both Class Representatives and Class Counsel have efficiently and diligently served the Class. First, the Named Plaintiffs have loyally and competently represented the Class since they respectively joined the litigation by, *inter alia*, sitting and preparing for depositions, responding to Defendants' interrogatories and requests to produce documents, and communicating with counsel through the litigation to discuss the case and terms of the Settlement. ECF 145-4 ¶ 22; Declarations of James Smith ("Smith Decl.") and Jerry Honse ("Honse Decl.") ¶¶ 7-10. The Class Representatives stood ready to testify at trial if the case did not settle. Smith Decl. ¶ 10; Honse Decl. ¶ 9. Neither Class Representative has interests that conflict with the Class. Smith Decl. Ex. A; Honse Decl. Ex. A.

Class Counsel also vigorously represented the Class during three years of hard-fought litigation, which included Plaintiffs' successful appeal to the Seventh Circuit, multiple meet and

confer conferences to resolve discovery disputes, a motion to compel production of documents, ECF 115, and a (now moot) motion for class certification, ECF 128. *See supra* Sections II-IV of Factual and Procedural Background. Class Counsel's discovery efforts during this litigation were substantial and involved Plaintiffs propounding 79 requests for the production of documents and 13 document subpoenas on third parties, reviewing approximately 32,476 documents and over 14 hours' worth of audio recordings produced in response to such requests, responding to Defendants' written discovery requests, taking ten (10) defense and third-party witness depositions, and defending the two Named Plaintiffs' depositions. *Id*. Moreover, Plaintiffs worked with a valuation expert to quantify losses suffered by Class Members and prepare for expert discovery. *Id.*

Using the information produced in discovery, the Parties attended mediation and engaged in protracted settlement negotiations spanning several months. *Id*. If the case had not settled, Class Counsel was prepared to complete expert discovery, oppose Defendants' possible summary judgment motion(s) and *Daubert* motion(s), and prepare for trial. Yau Decl. ¶ 3; Feinberg Decl. ¶ 5. Therefore, this factor weighs in favor of settlement approval.

### 2. The Settlement Is the Product of Arm's Length Negotiations by Well-Informed and Experienced Counsel

Rule 23(e)(2)(B) considers whether the proposed settlement was negotiated at arm's length. The best evidence of a "truly adversarial bargaining process" is the presence of a third-party mediator. 4 Newberg & Rubenstein on Class Actions § 13:50 (June 2023); *see also* Fed. R. Civ. P. 23(e)(2)(B) advisory committee's notes to 2018 amendment. As discussed above, the Settlement was negotiated by sophisticated counsel over the course of several months and entailed a mediation facilitated by an experienced JAMS mediator. *See supra* Section IV of Factual and Procedural Background. Thus, this factor also weighs in favor of settlement approval. *See Hale v. State Farm Mut. Auto Ins. Co.*, 2018 WL 6606079, at *3 (S.D. Ill. Dec. 16, 2018) (finding arm's

length negotiations where experienced attorneys familiar with the legal and factual issues of the case reached a settlement with a mediator).

### 3. The Relief Provided to the Class Is Adequate

Rule 23(e)(2)(C) instructs courts to evaluate whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."

_First_, as discussed in detail above, the Settlement provides $14.8 million of economic value to the ESOP by increasing the value of the ESOP's Triad stock. _See supra_ Section I of Summary of the Proposed Settlement Terms. The Settlement is an excellent outcome for the Class by several measures. For example, the Settlement's value exceeds the value of other ESOP settlements inside and outside this Circuit. _See, e.g._, _Ahrendsen v. Prudent Fiduciary Servs., LLC_, 2023 WL 4139151, at *5 (E.D. Pa. June 22, 2023) (granting final approval of $8.7 million ESOP settlement); _Nistra v. Reliance Tr. Co._, No. 16-04773, ECF 290 (N.D. Ill. June 19, 2020) (final approval of $13.4 million ESOP settlement); _Allen v. GreatBanc Tr. Co._, No. 1:15-cv-03053, ECF 108 (N.D. Ill. May 6, 2019) (final approval of $2.25 million ESOP settlement). The relative magnitude of the Settlement's economic impact is also outstanding: Defendants' Settlement consideration causes the value of participants' retirement accounts to increase by $5.32/share through the loan reduction alone. SA § III.11; ECF 147.

Finally, the Settlement is excellent when compared to Plaintiffs' valuation expert's estimate of the ESOP's overpayment, which ranged between $3 million and $35 million. _See supra_ Section III of Factual and Procedural Background. The Settlement's value is, at minimum, 42% of

the ESOP's overpayment, and at best, almost 500% of the ESOP's overpayment, which exceeds amounts approved in other ERISA class action settlements. *See, e.g.*, *Ahrendsen*, 2023 WL 4139151, at *5 (granting final approval of settlement that provides 39% to 100% of potential recovery); *Boyd v. Coventry Health Care Inc*., 299 F.R.D. 451, 463 (D. Md. 2014) (approving settlement that recovered 3.2% of estimated maximum losses); *Pfeifer v. Wawa, Inc.*, 2018 WL 4203880, at *9 (E.D. Pa. Aug. 31, 2018) (finding recovery of 25% under one damages theory and 50% under another damages theory to support settlement approval). While much of the Settlement's consideration is not in cash, the economic value gained is equivalent because it causes the value of Class Members' ESOP accounts to increase. *See* ECF 145 at 16–17 (citing 401(k) plan settlements and U.S. Department of Labor ESOP class action settlements).

While Plaintiffs were confident in the merits of their claims, continued litigation would pose significant costs, risks, and delay. Here, Plaintiffs' core allegations are that Defendants caused the ESOP to purchase 100% of Triad stock for more than fair market value in violation of ERISA. *See* First Amended Complaint, ECF 99. These allegations involve the reasonableness of Triad's financial projections, Triad's failed attempts to sell its stock to third-party buyers before selling to the ESOP, whether the valuation methods employed by GreatBanc were proper (including whether the purchase price fully accounted for the Triad Defendants' retention of control over the Company), and whether negative market trends were sufficiently investigated by GreatBanc during its due diligence process. Defendants vigorously deny all of Plaintiffs' allegations and have asserted affirmative defenses, and Defendants would point to evidence to support their position that they have no liability. The Parties also disagree on the amount of relief entitled to Plaintiffs and the Class. As explained in Plaintiffs' Unopposed Motion for Preliminary Settlement Approval, the value of the settlement consideration (approximately $14.8 million) is an excellent outcome

considering Plaintiffs' valuation expert's estimate. *See* ECF 145 at 15–16 (describing measure of loss in ESOP cases and the Class's potential range of recovery). On the other hand, Defendants would argue that Plaintiffs are entitled to no relief, and in fact, would have sought an offset for any monetary recovery the Class obtained after trial because they have already returned over $13.8 million to the ESOP through a loan reduction before the Action was filed.

These factual and legal issues would have required expert discovery, possible *Daubert* motions, and litigation of Plaintiffs' motion for class certification and possible summary judgment motions. Finally, trial of Plaintiffs' claims would entail substantial investment of attorney time and expenses, particularly with expert testimony. Regardless of the outcome, appeals would likely be inevitable, further delaying resolution and incurring expense. Therefore, the Settlement provides substantial economic value to the Class in light of the risks and uncertainty of ongoing litigation.

*Second*, the proposed method of distributing relief to the Class is fair, convenient, and effective. All Class Members that have active ESOP accounts will experience an increase in the value of their shares in their accounts upon the effectuation of the Settlement terms. Class Members with active ESOP accounts may then monetize the value of their Triad stock when they terminate their employment with Triad or retire. The Settlement Administration will also distribute a cash payment of $8.20 per share to Class Members who already sold their Triad stock, which is more than double what they previously received for their ESOP stock. ECF 145-1 ¶ 37. All Class Members will automatically receive the benefit of the Settlement.

*Third*, the proposed award of attorneys' fees and the timing of payment is reasonable. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). Class Counsel is concurrently filing a motion for attorneys' fees and expense reimbursement, settlement administration expenses, and service awards, which together shall not exceed $2.5 million. The combined attorneys' fees and expenses amount (with

settlement administration expenses and service awards) represents only 16% of the Settlement's total value. Yau Decl. ¶ 7. This percentage of the Settlement's value is well below the average contingency fee commonly granted by courts within this Circuit in ERISA class actions, which is typically one-third. *See Godfrey v. Greatbanc Tr. Co.*, No. 1:18-cv-07918, ECF 324 at *4 (N.D. Ill. Oct. 4, 2022); *Spano v. Boeing Co.*, 2016 WL 3791123, at *2 (S.D. Ill. Mar. 31, 2016); *Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *2 (S.D. Ill. Jan. 31, 2014). Moreover, the Independent Fiduciary's Report will evaluate the reasonableness of the requested attorneys' fees. Finally, the timing of any attorneys' fees payment adequately protects Class Members because any Court-awarded attorneys' fees may not be paid until the Settlement becomes Final. SA § VIII.2.

*Fourth*, no side agreements exist that must be disclosed under Rule 23(e)(3).

### 4.      The Proposal Treats Class Members Equitably to Each Other

Finally, under Rule 23(e)(2)(D), the proposed Settlement treats Class Members equitably relative to each other. Former participants will receive Settlement payments based on the number of shares they each held at the time that they cashed out their Triad stock, and current participants will receive a proportional increase in the value of their ESOP accounts based on the number of shares that they hold. *See supra* Section I of Summary of the Proposed Settlement Terms. As a result, Class Members' recoveries are proportional to their exposure to the ESOP Transaction. *See Kaplan v. Houlihan Smith & Co.*, 2014 WL 2808801, at *3 (N.D. Ill. June 20, 2014) (approving ESOP settlement that allocates recovery "based on the number of shares each class member held"); *Chesemore v. All. Holdings, Inc.*, 2014 WL 4415919, at *1 (W.D. Wis. Sept. 5, 2014), *aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016) (similar).

### C.      The Settlement Is Fair and Reasonable Under the Seventh Circuit's Factors

#### 1.      The Strength of Plaintiffs' Claims, Balanced Against the Settlement Offer, and the Complexity, Length, and Expense of Further Litigation

The Northern District of Illinois has explained that the "strength of the case" factor and the "complexity, length, and expense of further litigation" factor are captured by Rule 23(e)(2)(C)'s adequacy of relief factor. *See T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943, at *10 n.9 (N.D. Ill. Mar. 25, 2022), *appeal dismissed*, 2022 WL 19575674 (7th Cir. Aug. 22, 2022). As explained above, *supra* Section II.B.3, these factors weigh in favor of final settlement approval.

### 2. *The Amount of Opposition and the Reaction of the Class Members to the Settlement*

While the Settlement Administrator and Class Counsel have received 27 calls or emails, they have received zero objections or concerns to date. Yau Decl. ¶¶ 42–45; Mitchell Decl. ¶¶ 13-15.  Plaintiffs will respond to any objections submitted after this filing by August 11, 2023.

### 3. *The Opinion of Competent Counsel*

Courts are "entitled to rely heavily on the opinion of competent counsel." *Gastreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (citation omitted). Class Counsel believes the Settlement provides the Class with substantial economic value that is fair given the risk of recovering less or nothing after trial (ECF 145-4 ¶ 25; ECF 145-1 ¶ 40), and Defendants' Counsel does not oppose.

### 4. *The Stage of the Proceedings and the Amount of Discovery Completed*

As described above, *supra* Section II.B.1, the advanced stage of the litigation and the completion of discovery gave the Parties a full view of the claims and defenses. *See In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 938 (N.D. Ill. 2022); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 588 (N.D. Ill. 2011).

## **CONCLUSION**

Certification of the Settlement Class and final approval of the Settlement is warranted.

Dated: July 17, 2023     Respectfully submitted,

*/s/ Caroline E. Bressman*
Caroline E. Bressman (admitted pro hac vice)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
400 South Fourth Street ● #401-27
Minneapolis, MN 55415
Tel: (612) 807-1575
cbressman@cohenmilstein.com

Michelle C. Yau (admitted *pro hac vice*)
Daniel R. Sutter (admitted *pro hac vice*)
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com
dsutter@cohenmilstein.com

Carol V. Gilden, Illinois Bar: 6185530
190 South LaSalle Street ● Suite 1705
Chicago, IL 60603
Tel: (312) 357-0370
Fax: (312) 357-0369
cgilden@cohenmilstein.com

**FEINBERG, JACKSON, WORTHMAN & WASOW, LLP**
Nina Wasow (admitted *pro hac vice*)
Dan Feinberg (admitted *pro hac vice*)
2030 Addison Street ● Suite 500
Berkeley, CA 94704
Tel: (510) 269-7998
Fax: (510) 269-7994
nina@feinbergjackson.com
dan@feinbergjackson.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on July 17, 2023, I caused a true and correct copy of the foregoing to be filed electronically using the Court's CM/ECF system and to be thereby served upon all registered participants identified in the Notice of Electronic Filing in this matter on this date.

*/s/ Caroline E. Bressman*
Caroline E. Bressman